**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 17 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee and Cross-
Appellant,

    v.

CHERYL MARIE GIGLEY,

    Defendant-Appellant and Cross-
Appellee.

Nos. 99-3025, 99-3048

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 96-CR-40002)

Tom G. Luedke, Assistant United States Attorney (Jackie N. Williams, United
States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-
Appellee/Cross-Appellant.

Marilyn M. Trubey, Assistant Federal Public Defender (David J. Phillips, Federal
Public Defender, with her on the brief), Topeka, Kansas, for Defendant-
Appellant/Cross-Appellee.

Before **BALDOCK**, **HENRY**, and **LUCERO**, Circuit Judges.

**BALDOCK**, Circuit Judge.

Defendant Cheryl Marie Gigley conditionally pled guilty to possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841.      See Fed. R. Crim. P. 11(a)(2).  The district court sentenced her to ten years imprisonment.  She appeals the district court's denial of her motion to suppress drug evidence as well as her motion to withdraw her guilty plea.  The Government cross-appeals the district court's use of the quantity of methamphetamine mixture to calculate Defendant's base offense level for sentencing.  Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  We affirm the district court's denial of Defendant's motion to suppress and motion to withdraw her guilty plea, and remand for resentencing based on the quantity of pure methamphetamine.

I

While patrolling I-35, Kansas Highway Patrol Trooper Brian Smith stopped Defendant's van for speeding and weaving.  Smith approached Defendant's van and asked Defendant to get out and produce her driver's license.  Defendant sat in the front passenger seat of Smith's patrol car.  While checking Defendant's driver's license, Smith asked Defendant about her travel plans.  Defendant stated she was traveling from    Tulsa to Minneapolis.

About eight minutes after the start of the encounter, the dispatcher told Smith that Defendant's license was valid.  Smith returned Defendant's license and registration and issued her a warning citation.  At the suppression hearing, Smith

-2-

testified: "At that time I informed her that was all I had for her." Then, "I asked her if I could ask a couple more questions." Smith testified that Defendant's reply was "She sat there and–yes." Smith asked her if she was carrying drugs or guns in her car. She replied that she was not. Next, Smith "asked her if [he] could look in the vehicle." Defendant hesitated, but once Smith assured her the search would not take long, she said yes. Smith testified, "At that time, I informed her that if I was going to look in the vehicle that I would like to have her get the dog out and move it away at a safe distance . . . ." Smith waited in his patrol car while Defendant took the dog out of the van, put it on a leash, and walked it away from the van. Smith testified, "When she got the dog out of the vehicle, she left the passenger side front door open as well as the sliding door on the side were left open on the vehicle."

Smith and another officer who had arrived at the scene searched the van while Defendant and her dog waited on the shoulder of the road about 20-25 yards away. At no time did Defendant object to the officers' search. Within six minutes, the officers looked under the rear middle seat and found a large black plastic bag wrapped with grey duct tape. Inside were four clear plastic bags containing methamphetamine.

II.

Defendant argues that the district court erred in denying her motion to suppress the drug evidence on the grounds that (1) the officers did not have reasonable suspicion to search her car and (2) she did not voluntarily consent to the search. After hearing Smith's uncontroverted testimony and viewing a videotape of the encounter, which we also have reviewed, the district court denied the motion, finding that "this was a valid search. . . . Defendant knew that she was consenting to allow this search and that she did give a valid consent."[1]

A.

In reviewing the denial of a motion to suppress, we review the evidence in a light most favorable to the government. United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999). We review the district court's findings of historical fact for clear error and give due weight to the inferences which the district court draws from those findings. Id. The credibility of witnesses and the weight to be given the evidence is the province of the district court. Id. The district court's

---

[1] We remind the district courts that the existence of a videotape of the encounter does not release the district courts from making adequate findings. See Fed. R. Crim. P. 12(g) (providing for the making of a record of findings of fact made orally at pretrial hearings); United States v. Mendez, 118 F.3d 1426, 1430-31 (10th Cir. 1997) (remanding the case to the district court to make more factual findings regarding the voluntariness of the defendant's consent).

ultimate determination as to the constitutionality of a law enforcement official's actions is a question of law reviewable de novo. Id.

Like in the district court, Defendant raises the issues of reasonable suspicion and voluntarily consent. We need not, however, reach the question of whether Smith had reasonable suspicion to search the van because we hold that the district court did not clearly err in finding that Defendant voluntarily consented to the search of her van. See United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997) (noting that once an officer returns the licence and registration and writes a citation, the officer must let the driver go without further questioning, unless the officer has a reasonable suspicion of criminal activity or the driver's voluntary consent). When reviewing the record, we look for evidence that (1) Defendant in fact voluntarily consented to the search and (2) the search did not exceed the scope of Defendant's consent. Elliott, 107 F.3d at 810.

Because a consensual encounter is voluntary, such an encounter does not constitute a "seizure" within the meaning of the Fourth Amendment. Patten, 183 U.S. at 1194. Rather, a consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer. Id. By contrast, an individual is "seized" when she has an objective reason to believe that she is not free to terminate her conversation with the officer and proceed on her way. Id. The question of whether an encounter was

-5-

consensual is a matter for the refined judgment of the district court.  Id.  Valid

consent is that which is freely and intelligently given.  Id.  Whether a consent to

search during a consensual encounter with a police officer is voluntary is a

question of fact to be determined from the totality of the circumstances.  Id.

"The scope of a search is . . . limited by the breadth of the consent given."

Elliott, 107 F.3d at 814-15 (citations omitted).  We apply an "objective

reasonableness" standard to the scope of consent: "what would the typical

reasonable person have understood by the exchange between the officer and the

suspect."  Id.  We look at the totality of the circumstances when determining

whether a search was within the scope of the consent.  United States v. Gutierrez-

Hermosillo, 142 F.3d 1225, 1231 (10th Cir.), cert. denied, 119 S. Ct. 230 (1998).

B.

Applying the foregoing to the facts of this case, the detention ended when

Smith returned Defendant's licence and registration and handed her a warning

citation, telling her: "That's all I have for you."  See Elliott, 107 F.3d at 814

(noting that the encounter was consensual because the officer returned the

defendant's documentation to her before asking any questions about carrying

contraband).  The consensual encounter began when Defendant granted Smith

permission to ask her some questions.  See Patten, 183 F.3d at 1192 (noting that

the consensual encounter began when the defendant asked the officer about local

-6-

tourist attractions).  The fact that Defendant was sitting in the front passenger seat of Smith's patrol car, without more, does not make her consent involuntary.  See United States v. Anderson, 114 F.3d 1059, 1064 (10th Cir. 1997) (finding that the encounter was consensual, despite the fact that the officer and the defendant were both sitting in the patrol car during the questioning, because a reasonable person would have felt free to terminate the encounter).

After Smith asked her if he could "look" in the van, Defendant hesitated, but once Smith told her it would not take long, Defendant said yes.  Defendant's hesitation does not make the consent involuntary.  See United States v. Flores, 48 F.3d 467, 468 (10th Cir. 1995) (finding that the defendant's consent was voluntary, despite the fact that she hesitated before reopening the trunk of her car).  Furthermore, Defendant proceeded to remove the dog and leave the van's doors open.  Smith could infer from Defendant's actions that she consented to the search.  See id. at 469 (finding that the defendant consented to the search by reopening the trunk).

Moreover, Smith's search did not exceed the scope of Defendant's consent. By agreeing to let Smith "look in" the van, Defendant authorized Smith to do more than just peer into the windows.  See United States v. McRae, 81 F.3d 1528, 1537-38 (10th Cir. 1996) (finding that consent to "look in" a car included lifting the carpet in the trunk); United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.

-7-

1990) (finding that consent to "look in" a car allowed the officer to remove door panels).  By removing her dog, leaving the van's doors open, and not objecting while the officers searched the van, Defendant signaled that the search was within the scope of her consent.  See Patten, 183 F.3d at 1195 (finding that the defendant consented to the officer's search of the suitcase in the trunk because the defendant remained silent and cooperated in opening the suitcase); United States v. Gordon, 173 F.3d 761, 766 (10th Cir. 1998), cert. denied, 120 S. Ct. 205 (1999) (A defendant's "failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent.").  Accordingly, we find that the district court did not clearly err in finding that Defendant voluntarily consented to the search.

## III.

Defendant also argues that the district court erred in denying her motion to withdraw her guilty plea on the grounds that her plea was not knowing and voluntary and that she received ineffective assistance of counsel.     [2]  Defendant

_____

[2]  As a threshold question, we must determine whether Defendant's ineffective assistance of counsel claim may be addressed on direct appeal or whether it should be addressed in a collateral proceeding pursuant to 28 U.S.C. § 2255.  "[I]n rare instances an ineffective assistance of counsel claim may need no further development prior to review on direct appeal."  See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  We may review an ineffective assistance of counsel claim on direct appeal if the record has been adequately developed by the district court prior to appeal.  United States v.

(continued...)

entered a conditional guilty plea on the advice of her counsel. Counsel wrote Defendant a letter stating that a "plea would result in as little as a 70 to 87 month sentence wherein trial will result in a sentence of 188 to 235 months." Defendant signed the bottom of the letter, stating that she had reviewed it. In her petition to enter the guilty plea, Defendant signed under oath the statement, "My lawyer has counseled and advised me on the nature of each charge, on all lesser included charges, and on all possible defenses that I might have in this case." The petition also stated, "I realize [that] the Court may impose the same punishment as if I had pleaded 'not guilty,' stood trial, and been convicted by a jury." The petition described the 10 year mandatory minimum sentence. The petition stated, "I believe that my lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he has given me."

---

[2](...continued)
Carter, 130 F.3d 1432, 1442 (10th Cir. 1997), cert. denied, 523 U.S. 1144 (1998).

In this case, we believe that the record is sufficiently developed to allow review of Defendant's ineffective assistance of counsel claim on direct appeal. After Defendant failed to appear for sentencing, she was represented by different counsel. Defendant's new counsel filed a motion to withdraw the guilty plea Defendant entered on the advice of her former counsel. The district court issued a written order denying the motion to withdraw the plea. Defendant's counsel again argued for allowing Defendant to withdraw her guilty plea at the sentencing hearing. Cf. Carter, 130 F.3d at 1442 (finding the record sufficiently developed because counsel had presented post-trial motions and testimony at the sentencing hearing regarding defendant's discussions with his counsel about the plea agreement).

At the plea hearing, the district court asked Defendant, "Do you realize that even though you plead guilty, the Court may impose the same punishment as if you had pleaded not guilty and stood trial and been convicted by a jury?" The district court informed Defendant that the minimum penalty was 10 years imprisonment and discussed the terms of the plea agreement. Defendant agreed that she entered the plea voluntarily and that she was satisfied with her attorney. The district court entered an order finding that Defendant pled freely and voluntarily and without coercion.

Defendant failed to appear for sentencing. Two years later, after she was apprehended, Defendant filed a motion to withdraw her guilty plea, arguing that it was involuntary and coerced due to the ineffective assistance of counsel. Specifically, Defendant argued that her counsel was deficient for falsely describing the minimum and maximum penalties. The district court denied Defendant's motion to withdraw her guilty plea, finding that her counsel was not ineffective and that his performance did not prejudice her case. The district court further found that

> [w]hen the defendant entered her plea, this court specifically asked her about the voluntariness of her plea, in accordance with Fed. R. Crim. P. 11. Prior to accepting her plea, this court insured that the defendant was accurately advised of the mandatory minimum penalty as well as the maximum penalty she faced should her plea be accepted. . . . [T]his court warn[ed the] defendant that it could impose the same punishment as if she had pleaded not guilty, stood trial, and been convicted by a jury.

-10-

The district court found that Defendant did not profess her innocence, and that her two-year delay in filing the motion to withdraw was due to her fugitive status and was likely to substantially prejudice the Government at trial.

A.

We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. United States v. Jones, 168 F.3d 1217, 1219 (10th Cir. 1999). The district court may allow a defendant to withdraw a guilty plea before sentencing "if the defendant shows any fair and just reason." Fed. R. Crim. P. 32(e). We will not reverse the district court unless Defendant demonstrates that the district court acted unjustly or unfairly, thereby abusing its discretion. Jones, 168 F.3d at 1219. In determining whether Defendant has carried this burden, we weigh the following factors: (1) whether the defendant has asserted her innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea was knowing and voluntary, and (7) waste of judicial resources. Id. A guilty plea is void if it is not knowing and voluntary. Parke v. Raley, 506 U.S. 20, 28 (1992).

Defendant relies primarily on the fifth and sixth factors to set aside her guilty plea. With respect to the sixth factor, a plea is valid if it represents a voluntary and intelligent choice among the alternatives open to the defendant.

-11-

See United States v. Kramer, 168 F.3d 1196, 1200 (10th Cir. 1999). With respect to the fifth factor, a defendant received ineffective assistance of counsel if (1) her counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant. Id. at 1201. Defendant must overcome a strong presumption that her counsel's performance fell within the broad range of reasonable professional conduct. Trice v. Ward, 196 F.3d 1151, 1159 (10th Cir. 1999). To show prejudice, the defendant must establish that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. Kramer, 168 F.3d at 1201.

B.

The record supports the district court's finding that Defendant entered her guilty plea voluntarily. Defendant was aware of the possible outcomes if she pled guilty or if she went to trial. The petition to enter the plea described the statutory minimum penalty and warned Defendant that she may receive the same sentence after a guilty plea that she would have received after a trial. Pursuant to Fed. R. Crim. P. 11, the district court conducted a thorough inquiry at the plea hearing to insure that Defendant pled freely and voluntarily. See Jones, 168 F.3d at 1220 (holding that the defendant's guilty plea was valid where the district court carefully questioned the defendant about whether he understood the consequences

-12-

of his guilty plea). At the plea hearing, Defendant agreed that she was not coerced into pleading guilty and that she made her plea voluntarily.

Likewise, the record supports the district court's finding that Defendant's counsel provided effective assistance during her decision to enter a guilty plea and that therefore she was not prejudiced. In the petition to enter the guilty plea and at the plea hearing, Defendant told the district court that she was satisfied with her counsel's performance. Based on the terms of the plea agreement, Defendant's counsel accurately described the possible penalties. Defendant could have received a sentence of 188-235 months if she was convicted at trial and the district court found the drug quantity to be 1-3 kilograms of methamphetamine (actual), resulting in a base offense level of 36. United States Sentencing Commission, Guidelines Manual , § 2D1.1(c) (Nov. 1995). With Defendant's criminal history category of I, an offense level of 36 produces a sentence of 188-235 months. Defendant could have received a sentence of 70-87 months if, starting with a base offense level of 36, the district court (1) granted a 3-level downward adjustment for acceptance of responsibility under § 3E1.1(b), (2) granted a 4-level downward adjustment for minimal role under § 3B1.2(a), and (3) found Defendant eligible for the "safety valve," 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2, thereby granting a 2-level downward adjustment, § 2D1.1(b)(4), and allowing the district court to impose a sentence below the 10 year statutory

-13-

minimum sentence, 21 U.S.C. § 841(b)(1)(A). The resulting offense level of 27, with Defendant's criminal history category of I, produces a 70-87 month sentence. [3] Because counsel's performance was not deficient, we need not reach the issue of whether his conduct prejudiced Defendant's case.

Considering the remaining factors, the district court did not abuse its discretion in denying Defendant's motion to withdraw her guilty plea. Defendant has not asserted her innocence. The two-year delay between the guilty plea and the filing of the motion to withdraw is the result of Defendant's failure to appear for sentencing. The delay would prejudice the Government because it will have difficulty producing witnesses, and those who do appear may have failing memories. Defendant has not shown an interest that overcomes the inconvenience to the courts and the waste of judicial resources. See Jones, 168 F.3d at 1219-21.

IV.

The Government cross-appeals, arguing that the district court erred in relying on the quantity of methamphetamine mixture to find the base offense level for sentencing. The Kansas Bureau of Investigation report noted that the total quantity of methamphetamine mixture was 1678 grams. The report also noted that

---

[3] Even if his predictions had been inaccurate, that would not constitute ineffective assistance of counsel under these circumstances. "A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).

the four bags of methamphetamine, each weighing roughly 420 grams, were roughly 75% pure. The bags contained 1276 grams of pure methamphetamine.

The presentence report prepared in 1996 used the 1678 grams of methamphetamine mixture to suggest a base offense level of 32. The Government objected by letter, and the presentence report was revised to rely on the quantity of pure methamphetamine to suggest a base offense level of 36. After Defendant's reappearance, the republished presentence report again relied on the amount of methamphetamine mixture. Defendant objected to the presentence report; the addendum to the presentence report reflected Defendant's objections but not the Government's earlier objection. The Government renewed its objection at the sentencing hearing. [4]

On Defendant's motion, the district court ordered the Government to produce the drug evidence for independent testing. At the sentencing hearing, Defendant introduced the report of Dr. Peter F. Lott, who reviewed the KBI report. Dr. Lott wrote: "The laboratory work does not appear to be in significant error." The district court made no findings regarding Dr. Lott's report, but

---

[4] The Government's objection is properly before us because the district court considered it at the sentencing hearing. See Fed. R. Crim. P. 32(b)(6)(D) (providing for objections to presentence reports for good cause at any time before sentencing); United States v. Archuleta, 128 F.3d 1446, 1452 n.12 (10th Cir. 1997) (considering an objection that the government did not raise until the sentencing hearing).

merely adopted the base offense level of 32 as recommended in the presentence report.

At the sentencing hearing, the Government introduced the KBI report and objected to the presentence report's reliance on the quantity of methamphetamine mixture. The district court heard the objection, but overruled it, choosing to follow the presentence report's recommendation: "All right. I note your objection, but same is overruled. I'm going with the findings."

The district court imposed a 2-level enhancement for obstruction of justice and a 4-level reduction for minimal role, resulting in an offense level of 30. It found that Defendant was not entitled to an adjustment for acceptance of responsibility or the "safety valve" adjustment. Defendant's criminal history category was I, producing a sentencing range of 97-121 months. Because the statutory minimum sentence is 10 years, 21 U.S.C. § 841(b)(1)(A), the district court imposed a sentence of 120 months.

A.

The Government argues on cross-appeal that the district court erred in determining the base offense level using the quantity of methamphetamine mixture. We review the district court's factual findings for clear error and its interpretation and application of the sentencing guidelines de novo. United States v. Roberts, 185 F.3d 1125, 1144 (10th Cir. 1999). The Government has the

burden of proving the quantity of drugs by a preponderance of the evidence.
United States v. Green, 175 F.3d 822, 836-37 (10th Cir.), cert. denied, 120 S. Ct. 132 (1999).

The sentencing guidelines' drug quantity table provides two ways of calculating the base offense level for methamphetamine: first, based on the quantity of methamphetamine-containing mixture, and second, based on the quantity of pure methamphetamine in the mixture.

> The terms "PCP (actual)" and "Methamphetamine (actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual).

U.S.S.G. § 2D1.1(c) n.B. The drug quantity table provides different base offense levels for methamphetamine and methamphetamine (actual). The district court is to "use the offense level determined by the entire weight of the mixture of substance, or the offense level determined by the weight of the PCP (actual) or methamphetamine (actual), whichever is greater." Id.; United States v. Decker, 55 F.3d 1509, 1513 (10th Cir. 1995); United States v. Cook, 49 F.3d 663, 664 (10th Cir. 1995).

B.

In this case, the KBI report found Defendant possessed 1678 grams of methamphetamine and 1276 grams of methamphetamine (actual). The district court used the quantity of methamphetamine to find a base offense level of 32,

rather than using the quantity of methamphetamine (actual) to find a base offense level of 36.  U.S.S.G. § 2D1.1(c) (drug quantity table).  The district court should have used the quantity of methamphetamine (actual) to find the base offense level because it produces a higher sentence.  See id. at § 2D1.1(c) n.B; Decker, 55 F.3d at 1513 ("In the final analysis, the guidelines directed the district court to calculate the drug quantity in two ways and to use the calculation which resulted in the greater sentence."); Cook, 49 F.3d at 664 (using the quantity of methamphetamine (actual) to determine the sentence because it produced a higher base offense level).  Accordingly, we remand for resentencing using the quantity of methamphetamine (actual).[5]

AFFIRMED in part and REMANDED for resentencing in accordance with this opinion.

---

[5] Defendant argues that the district used the lower base offense level because of uncertainties raised by Dr. Lott's report.  The district court, however, made no findings to that effect.  In any event, the sentencing guidelines are clear that the district court must impose the higher sentence.