**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GLEN E. BRUMMETT,

Defendant-Appellant.

No. 99-6279
(D.C. No. 98-CR-185-M)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Glen E. Brummett pleaded guilty to possession of pseudoephedrine with intent to manufacture methamphetamine. On appeal, he

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

challenges only the sentence imposed by the district court, contending that the court should not have based his sentence on the amount of "actual" methamphetamine he could have produced. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

Charges against Brummett resulted from an investigation into an alleged conspiracy to manufacture and distribute drugs within the Federal Correctional Institution at El Reno, Oklahoma. The investigation targeted Brummett, a counselor employed at the facility, and Roy Wells, an inmate, and led to a seven-count indictment against Brummett and Wells. Brummett pleaded guilty to count five, possession of a List I controlled substance (pseudoephedrine) with intent to manufacture methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2. The district court determined that based on the amount of pseudoephedrine Brummett possessed and the manufacturing method he used, he could have produced 100.25 grams of methamphetamine (actual), resulting in a base offense level of thirty-two.[1] The court granted him a two-level reduction pursuant to USSG §§ 2D1.1(b)(6) and 5C1.2 for the exception to the mandatory minimum sentence. With the resulting offense level of thirty, together with Brummett's criminal history category of I, the applicable sentencing

---

[1]     The court also considered a small amount of marijuana seized from Brummett, but the quantity of marijuana does not affect the sentence.

range was 97 to 121 months, and the court sentenced Brummett, inter alia, to 97 months' imprisonment. [2]

On appeal, Brummett challenges on two grounds the district court's determination of the purity of methamphetamine on which the court based its sentence. First, he contends that the government breached the plea agreement by arguing for a sentence based on "actual" or "pure" methamphetamine rather than on a mixture containing methamphetamine. Second, he contends that the district court erred in finding that the methamphetamine he could have produced would have been actual methamphetamine rather than a mixture. "We review the district court's legal interpretation and application of the sentencing guidelines de novo and review the court's factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir.), *cert. denied*, 527 U.S. 1029 (1999). The court's determination of the drug quantity for which a defendant is responsible is a factual matter we review for clear error. *See United States v. Wacker*, 72 F.3d 1453, 1477 (10th Cir. 1995).

---

[2] Wells also pleaded guilty to one count of the indictment, possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d)(1), and was sentenced, inter alia, to the statutory maximum of twenty years' imprisonment. In a separate order and judgment, we have affirmed Wells' sentence. *See United States v. Wells*, No. 99-6315 (10th Cir. August ___, 2000).

The sentencing guidelines [3] provide two ways of calculating the base offense level for methamphetamine convictions: one based on the quantity of a mixture containing methamphetamine, and the other based on the amount of pure or actual methamphetamine contained in the mixture. *See* USSG § 2D1.1(c) n.(B); *United States v. Gigley*, 213 F.3d 509, 518 (10th Cir. 2000). For comparable quantities, pure methamphetamine generates a higher offense level than a mixture containing methamphetamine. Here, the district court's determination that Brummett could produce 100.25 grams of pure methamphetamine resulted in a base offense level of thirty-two, while Brummett contends that had the court used the appropriate mixture quantity of 277 grams, the offense level would have been twenty-eight. The sentencing guidelines direct the district court to use either the offense level determined based on the entire weight of the mixture or that based on the weight of the actual methamphetamine contained in the mixture, whichever is greater. *See* USSG § 2D1.1(c) n.(B); *Gigley*, 213 F.3d at 519.

Brummett's plea agreement contained two stipulations he contends are relevant to his argument on appeal:

> (5) All parties believe, based on the available facts, that defendant **Glen E. Brummett's** methamphetamine manufacturing

---

[3] The 1998 version of the United States Sentencing Guidelines applies to this case.

process had a 60 percent reduction rate in converting pseudoephedrine to methamphetamine;

(6) All parties believe, based on the available facts (including an [Oklahoma State Bureau of Investigation] chemist's report), that defendant **Glen E. Brummett** possessed 514.3 grams of pseudoephedrine for the purpose of manufacturing methamphetamine . . . .

Appellant's Suppl. App. at 8.

Brummett contends that the government breached the plea agreement because it stipulated in the agreement to the amount of *methamphetamine* he could produce, but then argued that he should be sentenced based on *actual methamphetamine*. He acknowledges that he failed to raise this issue in the district court and thus requests that we review it for plain error. *See* Appellant's Reply Br. at 2. However, as this citation indicates, he failed to raise this issue until his reply brief, and we do not consider, even under a plain error standard, issues raised for the first time in a reply. *See United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996); *United States v. Hardwell*, 80 F.3d 1471, 1495 (10th Cir. 1996).

Brummett also contends that the district court erred in finding that he was capable of producing 100.25 grams of pure methamphetamine. Because no methamphetamine was seized, the district court based its determination of the amount and type of drug for which Brummett was to be held responsible on the parties' stipulations as to the amount of pseudoephedrine seized, the reduction

rate of Brummett's manufacturing method (referred to as the "Nazi method") and the testimony of a chemist employed by the Oklahoma State Bureau of Investigation. *See* USSG § 2D1.1, comment. (n.12) ("Where there is no drug seizure . . . , the court shall approximate the quantity of the controlled substance . . . [considering, inter alia,] the size or capability of any laboratory involved."); *United States v. Short*, 947 F.2d 1445, 1456-57 (10th Cir. 1991) (estimating drug quantity based on characteristics of drug laboratory). The chemist testified that given the amount of pseudoephedrine seized, the sixty percent reduction rate, [4] and a ten percent loss due to the molar ratio, [5] Brummett could have produced 105.53 grams of what he described as "pure" methamphetamine. Because the chemist also testified that the Nazi method was 95 to 99 percent efficient, the district court reduced the 105.53 grams by five percent to 100.25 grams. Although the chemist testified he thought that the reduction rate already took into account this 95 percent efficiency rate, he testified that the 100.25 grams would not have any

[4]     The chemist testified that the sixty percent reduction rate, which he described as conservative, accounted for the fact that "40 percent of this is lost throughout this process from grinding up [pseudoephedrine] tablets in a blender and pouring them into another container, what is left behind; from the reaction itself. This 40 percent is to account for that and to account for any errors which may occur . . . [and which may include] inefficiencies in the actual lab." Appellant's App. at 42-43.

[5]     The molar ratio represents weight lost due to the loss of an oxygen molecule during the chemical reaction. *See* Appellant's App. at 41-42.

-6-

impurities in it. Based on this evidence, the court determined that Brummett was accountable for 100.25 grams of actual methamphetamine.

Brummett contends essentially that the chemist was incorrect, that his process could not have produced pure methamphetamine, and that "[i]t is impossible for the government to prove, or the court to accept, a purity level of methamphetamine that was never produced." Appellant's Br. at 17. He cites no evidence contradicting the chemist's testimony, however, and the chemist's calculations, as adjusted by the court for the 95 percent efficiency of the Nazi method, were designed to determine the amount of pure methamphetamine Brummett could produce. Moreover, we see no reason why the court cannot rely on expert testimony regarding this issue. *See United States v. Hunt*, 171 F.3d 1192, 1196 (8th Cir. 1999) (upholding sentence based on expert's testimony of amount of actual methamphetamine defendant's laboratory could have produced). In short, the court's finding that Brummett was accountable for 100.25 grams of actual methamphetamine for sentencing purposes was not clearly erroneous.

AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge