**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 13 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DANIEL MOTT,

    Defendant - Appellant.

No. 99-3321
(D.C. No. 99-CR-20002)
(Kansas)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **ANDERSON** , Circuit Judges, and **MILLS,** [**] District Judge.

Daniel Patrick Mott pleaded guilty to possession with intent to distribute more than 100 grams of methamphetamine and attempt to manufacture more than ten grams of methamphetamine within 1000 feet of a public school and was sentenced to concurrent 168-month prison terms. He challenges the inclusion in his sentence of drug transactions outside the scope of the indictment and alleges

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

double counting in the calculation of the drug quantity attributable to him.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

**I**

On May 19, 1997, a Kansas City police officer stopped defendant's vehicle for traveling sixty-two miles per hour in a thirty mile per hour zone. After learning that defendant had a suspended driver's license and an outstanding arrest warrant, the officer arrested him. An inventory search of the vehicle uncovered $9890 in cash, a set of scales, and two packages of a powder containing methamphetamine. In September 1998, the Kansas City police executed a search warrant for illegal drugs at defendant's residence and discovered paraphernalia related to the manufacture of methamphetamine along with a substance that contained methamphetamine.[1] Defendant's home was located approximately 880 feet from an elementary school.

Following the search of his residence, defendant was arrested and charged in a five-count indictment in the United States District Court for the District of Kansas. He pleaded guilty to Counts 1 and 3, which alleged, respectively, knowing and intentional possession with intent to distribute more than 100 grams

---

[1] Items seized at defendant's home included plastic bags, scales, gas masks, plastic tubing, containers of denatured alcohol, glassware, red phosphorous, and more than 2500 tablets of over-the-counter medicine containing pseudoephedrine, all of which, according to the government, are used in the clandestine manufacture of methamphetamine.

of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and knowing and intentional attempt to manufacture more than ten grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) within 1000 feet of a public elementary school, in violation of 21 U.S.C. §§ 846 and 860.[2]

The presentence investigation report ("PSR") referenced a ledger kept by Angel Hernandez, who was arrested on separate drug charges and who agreed to cooperate with the government. The ledger indicated that defendant paid $9400 on May 21, 1998, paid another $9000 on June 5, 1998, and owed $26,250 as of June 5, 1998 for methamphetamine fronted by Hernandez.

Agent William Barajas, a drug investigator with the Kansas City, Kansas Police Department who worked for four years with the DEA Task Force, testified at sentencing regarding the meaning of Hernandez's ledger notations. On examination by the court, Barajas admitted that his interpretation of the figures in

---

[2] Counts 2, 4, and 5, on which defendant did not plead guilty, alleged the following: knowing and intentional possession with intent to distribute more than twenty grams of a mixture or substance containing a detectable amount of methamphetamine within 1000 feet of a public elementary school in violation of 21 U.S.C. §§ 841(a)(1) and 860; knowing and intentional possession of pseudoephedrine, a List I chemical as defined in 21 U.S.C. § 802, with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d); and maintaining a residence for the purpose of manufacturing and distributing methamphetamine within 1000 feet of an elementary school in violation of 21 U.S.C. §§ 856(a)(1) and 860.

the ledger was not supported by specific knowledge of Hernandez's recordkeeping system, but only by his experience with drug traffickers' use of ledgers and with Hernandez's statements regarding "how he dealt." (III R. at 46, 65.) Barajas also testified that methamphetamine is sold in the Kansas City area for approximately $10,000 per pound. According to Barajas, there was no known connection between defendant and Hernandez in May 1997, when $9890 in currency was discovered in defendant's vehicle.

Although defendant objected that he was "blindsided" by the use of the ledger in the PSR, the sentencing court accepted the government's assertion that it had orally advised defendant's counsel in the early stages of the prosecution of the anticipated use of discovery items from the Hernandez case. (I R. Doc. 35 at 4.)

The PSR added the $9400 payment and $26,250 balance in Hernandez's ledger to the $9890 found in defendant's vehicle and converted the resulting $45,540 figure to an amount of methamphetamine—4.554 pounds at $10,000 per pound—to calculate the additional drug quantity attributable to defendant's uncharged offenses.[3] Finding that the June 5 payment of $9000 could have been included in the PSR, the district court nonetheless accepted the PSR's more

_____

[3] That amount was added to the 332.8 grams of methamphetamine seized from defendant's car and the 63.7 grams of methamphetamine that the pseudoephedrine tablets could have yielded.

-4-

"favorable" construction. (III R. at 71.) Finally, the court noted that the $9890 found in defendant's car in May 1997 was not returned to him and could not have been used in his later transactions with Hernandez. The court determined defendant's base offense level to be 35 pursuant to U.S.S.G. §§ 2D1.1(c)(3) and 2D1.2(a)(2).

Following a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 and a two-level downward departure for defendant's cooperation, the court arrived at a total offense level of 30, a criminal history category of VI and a custody range of 168–210 months. Defendant was sentenced to two concurrent prison terms of 168 months each. On appeal, he challenges the inclusion of $45,540 of methamphetamine in the court's determination of his relevant conduct for sentencing purposes.

**II**

This Court reviews the district court's factual findings for clear error and its application of the sentencing guidelines de novo. United States v. Morales, 108 F.3d 1213, 1225 (10th Cir. 1997). Factual findings underlying the determination of a defendant's base offense level under the sentencing guidelines are reviewed for clear error. United States v. Roederer, 11 F.3d 973, 977 (10th Cir. 1993). The sentencing court's determination is clearly erroneous only if it is

not plausible or permissible in light of the entire record. Morales, 108 F.3d at 1225.

A

Claiming that he had no notice prior to his guilty plea of the existence of inculpatory evidence uncovered in the Hernandez investigation, defendant challenges the district court's consideration of uncharged methamphetamine deals as relevant conduct in the determination of his offense level and argues that the use of Hernandez's ledger to calculate his base offense level—even if permissible under the Sentencing Guidelines—violated his Fifth Amendment right to due process. Although he concedes that the Sentencing Guidelines permit consideration of "all acts" committed during and in preparation of an offense, defendant characterizes the transactions recorded in Hernandez's ledger as the "reasonably foreseeable acts" of another, which he asserts are properly considered only when conspiracy charges have been brought. U.S.S.G. § 1B1.3(a)(1)(A), (B).

In order for a guilty plea to be constitutionally valid, it must have been made knowingly and voluntarily. Parke v. Raley, 506 U.S. 20, 28 (1992); United States v. Gigley, 213 F.3d 509, 516 (10th Cir. 2000). In his brief, defendant asserts that his decision to plead guilty was not knowing and voluntary because it was based on an anticipated offense level exclusive of the quantity of

methamphetamine attributable to his dealings with Hernandez. Unfortunately for defendant, his claim that he was not notified that the transactions with Hernandez could be included as relevant conduct is belied by defendant's own statements and those of his counsel prior to sentencing. Defendant was instructed by the district court at the time of his guilty plea that his sentence would not be known until the PSR had been completed. Also at the time of his guilty plea, defendant indicated that he understood there is "virtually no limitation on the information that the Court can take into account" concerning his background, character, criminal record, employment history, and the offense in question. (II R. at 25.) At sentencing, defendant's counsel conceded not only that he was advised in the initial stages of the prosecution that the investigation of Hernandez had turned up evidence against defendant, but also that all of the discovery materials in the Hernandez case had been provided to him. As a result, the district court did not clearly err when it concluded that any lack of notice is attributable to counsel's failure to review the discovery materials, which he admits the government made available in a timely manner.[4]

---

[4] We are unsympathetic to defense counsel's response at sentencing that he was "provided with a stack of discovery that was about three inches thick." (III R. at 41.) If counsel's representation is accurate, these materials were not so voluminous that he can legitimately claim to have been surprised by the introduction of the ledger.

Finally, defendant misapprehends the nature of the relevant conduct introduced at sentencing. The ledger was introduced not as evidence of Hernandez's actions in "some type of conspiracy . . . arrangement," (III R. at 39), but as evidence of the defendant's own drug transactions, which may be included as relevant conduct under U.S.S.G. § 1B1.3(a)(1)(A). See United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993) ("Drug quantities associated with illegal conduct for which a defendant was not convicted are to be accounted for in sentencing, if they are part of the same conduct for which the defendant was convicted."). It was not clear error for the district court to conclude defendant entered his guilty plea with sufficient notice that his transactions with Hernandez could be taken into account in determining his offense level under the Sentencing Guidelines.

**B**

At sentencing, the government bears the burden of establishing by a preponderance of the evidence the quantity of drugs for which a defendant is responsible. United States v. Green, 175 F.3d 822, 836-37 (10th Cir. 1999); United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994). We will uphold the district court's calculation of drug quantity unless that calculation is clearly erroneous. Green, 175 F.3d at 837.

Defendant claims the additional drug quantity—4.5 pounds of methamphetamine—attributable to his uncharged offenses was not proven by a preponderance of the evidence. He urges that Agent Barajas's testimony was "based solely upon his interpretation of the Hernandez notebook" rather than on personal knowledge of the ledger's meaning. (Appellant's Br. at 18.)

The Sentencing Guidelines provide that a court may consider relevant information without regard to its admissibility under the rules of evidence so long as the information has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; see also United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995) (stating that reliable hearsay may be used in the determination of a sentence). "When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level, so long as the information relied upon

has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996) (internal citations and quotations omitted); see also United States v. McIntyre, 997 F.2d 687, 709 (10th Cir. 1993). Thus, if the ledger and Barajas's testimony possess sufficient indicia of reliability, the district court properly based its estimate of relevant drug quantity on those sources.

Defendant suggests Barajas's testimony was based only upon his experience as a police officer and his "interpretation" of the ledger, (Appellant's Br. at 18), not upon a discussion of the ledger's meaning with Hernandez. Although Barajas admitted at the sentencing hearing that he did not talk with Hernandez "about this particular transaction" or "about his ledger system in general," he testified that he did interview Hernandez regarding "how he dealt." (III R. at 65-66.) Moreover, Barajas testified he was a co-case agent in the investigation that resulted in the charges against Hernandez and was familiar with the set of individuals in the Kansas City area, including defendant, to whom Hernandez had supplied methamphetamine.

Credibility determinations are to be made by the district court, and this Court will not decide among competing interpretations of testimony. See McIntyre, 997 F.2d at 709; see also United States v. Deninno, 29 F.3d 572, 578 (10th Cir. 1994) (holding that this Court defers to the district court when

reviewing the credibility of witnesses on whose testimony it relies in making factual findings regarding drug quantity). Given that the district court found Barajas to be a credible witness, his uncontradicted testimony bears the minimum indicia of reliability required under the Sentencing Guidelines. It was not error for the district court to conclude that the government had established, by a preponderance of the evidence, defendant's responsibility for the quantity of methamphetamine to which Barajas testified.

Impermissible double counting occurs when the same conduct is used to support separate increases in a defendant's sentence. United States v. Flinn, 18 F.3d 826, 829 (10th Cir. 1994). Defendant argues that the inclusion in his offense level calculation of the dollar amounts listed in the ledger and found in his car constituted double or triple counting prohibited by the Sentencing Guidelines. The basis of defendant's double counting claim is his allegation that the government failed to prove by a preponderance of the evidence that the $9890 in currency found in his car in May 1997, the $9400 amount dated May 21, 1998 on Hernandez's ledger,[5] and the $26,250 debt dated June 5, 1998 represented

_____

[5] It is admittedly unclear from the ledger entry whether the May 21, 1998 ledger entry indicates that $9400 was paid on that date, as the district court found, or owing as of that date. Less ambiguous is the notation indicating that defendant paid $9000 to Hernandez on June 5, 1998. Because the district court's conclusion that the May 21 entry represented a payment of $9400 was not clearly erroneous, we will not disturb that factual determination.

separate drug quantities. Put another way, the $26,250 figure in the ledger could have incorporated the $9400 figure as well as the $9890 in cash seized from defendant a year earlier. He claims the sentencing court impermissibly totaled those dollar amounts to arrive at a higher offense level, engaging in double or even triple counting.

Based on Barajas's uncontradicted testimony that defendant and Hernandez did not transact business in May 1997, and in the absence of any evidence to the contrary, the district court's conclusion that the $9890 seized from defendant in that month was attributable to a separate transaction was not clearly erroneous.

The same is true of the determination of drug quantity attributable to the transactions recorded in Hernandez's ledger. Claiming the PSR erroneously added the $9400 figure to the $26,250 balance as of June 5, 1998 in its calculation of the drug quantity attributable to his offenses, defendant argues that the $9400 denotes a portion of his total debt rather than a payment. At sentencing, the district court observed:

> Actually, if you take the ledger at face value, I think that Mr. Mott is being charged with a lesser quantity of drugs than would fairly appear from the face of [the ledger].
>     . . . .
> Since the presentence investigation only uses the figure of $45,540, . . . there's exactly a $9,000 figure that is not being charged against the defendant.

(III R. at 69-70.) The court concluded that "defendant has received favorable, more favorable construction of [the ledger] than I would have given him and that there's not error in the formulation under the presentence investigation report." (Id. at 71.) Because the $9000 payment was not included in the total drug quantity, even if the $9400 and $26,250 figures overlapped the result was an error of only $400. At $10,000 per pound, $400 could have accounted for only slightly more than 0.018 kilogram of the 2.44 kilograms for which the court found defendant responsible. Without it, defendant would have been sentenced at the same base offense level pursuant to U.S.S.G. § 2D1.1(c)(3) (setting a base offense level of 34 for offenses involving "[a]t least 1.5 KG but less than 5 KG of Methamphetamine"), so that any alleged error was harmless. See Fed. R. Crim. P. 52(a) ("Any error . . . which does not affect substantial rights shall be disregarded."). Defendant has not demonstrated error requiring reversal of his sentence.

### III

The judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge