**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

AMKAR NOE SANDOVAL,

Defendant-Appellant.

No. 00-2036
(District of New Mexico)
(D.C. No. CR-99-569-BB)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **HOLLOWAY,** and **MURPHY**, Circuit Judges.

I. INTRODUCTION

Defendant Amkar Noe Sandoval entered a conditional guilty plea to one count of possession with intent to distribute cocaine. Sandoval appeals the district court's denial of his motion to suppress, arguing he was unlawfully detained without reasonable suspicion beyond the time necessary to issue a citation. *See* Fed. R. Crim. P. 11(a)(2) (providing that a defendant, with approval

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of the court and consent of the government, may enter conditional guilty plea and reserve right to appeal an adverse determination of pretrial motion). This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's denial of the motion to suppress.[1]

II. BACKGROUND

The following facts are viewed in a light most favorable to the government, the prevailing party below. *See United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). In April 1999, New Mexico State Police Officer Wayne Harvey observed a maroon Chrysler with Texas license plates proceeding northbound on Interstate Highway 25 at a high rate of speed. He engaged his patrol radar and clocked the car traveling at 92 miles per hour in a 75 mile-an-hour zone. Officer Harvey pulled the car over and called in its license plate number to determine if it was a stolen or wanted vehicle. Officer Harvey did not receive a report from dispatch indicating to him that the car was stolen. The entire encounter was recorded on videotape from a video camera contained in the officer's police unit; the videotape was played at the suppression hearing.

---

[1]The government asks this court to affirm the district court's denial on grounds that Sandoval has no standing to challenge the search of the car. Because we agree with the district court that Sandoval has standing, we affirm on the merits. *See United States v. Rubio-Rivera*, 917 F.2d 1271, 1274-75 (10th Cir. 1990).

Officer Harvey approached the car and requested to see Sandoval's driver's license and his vehicle registration or insurance. Sandoval handed Officer Harvey a driver's license and the registration to the car, which he obtained from the glove compartment. Officer Harvey explained to Sandoval that he was going to issue him a speeding citation and informed him of his options for paying the ticket. Officer Harvey returned to his patrol car to issue the citation. As he was writing the citation, he noticed that Sandoval was not the registered owner of the car, nor did he have the same last name or address as the registered owner. The car was registered to Claudia Espinosa, who lived in El Paso. Officer Harvey also noticed that Sandoval was "fidgeting around, moving back and forth" as if he was "either uncomfortable or nervous."

Officer Harvey returned to the car and handed Sandoval his license, the registration, and an envelope in which to mail the fine for the speeding ticket, but he did not provide him with a copy of the ticket. The officer explained the citation to Sandoval once more and then inquired about his travel plans. Sandoval indicated that he was traveling to Denver for a week. Officer Harvey asked Sandoval who owned the vehicle. Sandoval replied that it belonged to his cousin. Officer Harvey testified that he asked Sandoval for his cousin's name, and Sandoval "proceeded to clear his throat numerous times. He was searching for an answer." Sandoval picked up the registration, which he had placed on the

passenger seat, and read the name on the registration card. Officer Harvey testified that he thought it was odd that Sandoval was driving his cousin's vehicle yet did not know his cousin's name.

Officer Harvey asked Sandoval to step out of the car so he could issue the citation. Although Officer Harvey testified that he normally did not ask a person to step out of the car when issuing a ticket, he did so in this case because Sandoval was nervous, refused to make eye contact with him, and did not know the name of the owner of the car. Officer Harvey testified that these factors led him to suspect that the car was stolen and not yet reported as such, or that Sandoval "might have contraband within the vehicle or on his person."

Officer Harvey and Sandoval moved to the rear of the car to avoid the approaching traffic. Officer Harvey asked Sandoval where his luggage was, and Sandoval replied that it was in the trunk. The officer asked Sandoval whether he could look at the luggage, and Sandoval replied, "Sure," and proceeded to open the trunk. The trunk contained two winter jackets and a small athletic duffel bag. Officer Harvey moved these items to ensure there was no concealed weapon. As he moved the contents of the trunk, Officer Harvey noticed a black, circular retaining screw approximately three or four inches in diameter, something he had never before seen in a vehicle.

Officer Harvey reexplained the citation to Sandoval and gave him his copy of the ticket. Once Sandoval received the citation, Officer Harvey asked, "May I search or look into the back of your area right here?" and, with his hand, indicated that we was referring to the trunk area. Officer Harvey testified that Sandoval replied, "Sure, go ahead." Officer Harvey asked Sandoval to stand on the unimproved portion of the right-of-way and began to search the trunk and its contents. Officer Harvey examined the retaining screw, undid it, lifted the carpet and a piece of plywood, and found a concealed compartment. The compartment contained 18 kilograms of cocaine. Ultimately, police officers discovered three secret compartments containing 50 kilograms of cocaine.

Sandoval was charged in a two-count indictment with possessing cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). He entered a not guilty plea and later filed a motion to suppress the cocaine obtained during the traffic stop. The United States District Court for the District of New Mexico denied Sandoval's motion to suppress following a hearing on the issue.

Pursuant to a plea agreement, Sandoval subsequently entered a conditional guilty plea to the possession charge and the firearm charge was dropped. The district court sentenced Sandoval to sixty-three months imprisonment, followed

by three years supervised release. On appeal, Sandoval argues the district court erred in denying his motion to suppress because the officer detained him without reasonable suspicion. He further asserts that his consent to search the trunk was not voluntary.

III. DISCUSSION

A. Standard of Review

In reviewing the denial of a motion to suppress, this court reviews the district court's findings of fact for clear error, giving deference to the inferences the district court draws from its findings. *See United States v. Gigley*, 213 F.3d 509, 513-14 (10th Cir. 2000). Weighing the credibility of witnesses is solely within the province of the district court. *See Hunnicutt*, 135 F.3d at 1348. We review the district court's legal conclusions as to the reasonableness of the officer's actions *de novo*. *See United States v. Soto*, 988 F.2d 1548, 1551 (10th Cir. 1993).

B. Reasonable Suspicion

Sandoval argues that he was unlawfully detained beyond the time necessary to issue a traffic citation in violation of the Fourth Amendment. Generally, an investigative detention must not last any longer than necessary to effectuate the purpose of the stop. *See United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999). Questioning beyond the time it takes to issue a citation is permissible

-6-

only if "(1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity; or (2) the driver voluntarily consents to the officer's additional questioning." *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997) (quotation omitted).

While returning Sandoval's driver's license and the vehicle registration, Officer Harvey lawfully questioned Sandoval about his travel plans. *See United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994). After questioning Sandoval about the identity of the vehicle owner, Officer Harvey lawfully asked Sandoval to step out of the car. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Officer Harvey testified that he did so because Sandoval was nervous, refused to make eye contact with him, and did not know the name of the owner of the vehicle, an individual Sandoval had asserted was his cousin. This led him to believe that the car was stolen but not yet reported, or that there was contraband in the vehicle or on his person. Officer Harvey asked Sandoval where his luggage was located and whether the car contained contraband or large sums of money. He had not yet issued Sandoval a citation at this point. Because Sandoval had not consented to further questioning, his continued detention was lawful only if the officer had a reasonable suspicion that Sandoval was engaged in an illegal activity.

This court examines the totality of the circumstances to determine whether Officer Harvey had an objective justification to detain Sandoval beyond the time necessary to issue a citation. *See United States v. Houston*, 21 F.3d 1035, 1038 (10th Cir. 1994). Officer Harvey indicated during the suppression hearing that Sandoval was "fidgeting around, moving back and forth" as if he was "either uncomfortable or nervous." Although the district court made no findings about Sandoval's nervousness, we must view the facts in a light most favorable to the government. *See Hunnicutt*, 135 F.3d at 1348. Sandoval's nervousness is relevant to a determination of reasonable suspicion, even if it is not sufficient by itself to establish reasonable suspicion. *See United States v. Soto-Cervantes*, 138 F.3d 1319, 1324 (10th Cir. 1998).

In ruling on Sandoval's motion to suppress, the district court concluded that Sandoval's inability to name the registered owner of the car was a "proper factual predicate for the officer to follow up and have a reasonable suspicion to ask additional questions." Even though the car Sandoval was driving had not been reported as stolen, Sandoval indicated to Officer Harvey that it belonged to his cousin. Sandoval, however, was unable to tell the officer the name of his cousin or the owner of the car without looking at the registration. Officer Harvey widened the scope of his questioning only after he noticed Sandoval's nervousness and asked Sandoval who owned the vehicle. Combined with his

nervousness, Sandoval's inability to offer proof of ownership or to produce satisfactory proof of entitlement to operate the vehicle generated an objectively reasonable suspicion of criminal activity, thereby warranting further questioning. [2]

*See Hunnicutt*, 135 F.3d at 1349; *Soto*, 988 F.2d at 1556.

C. Voluntary Consent

After inquiring about Sandoval's travel plans, Officer Harvey asked him about his luggage. Sandoval indicated that his bag was in the trunk, and Officer Harvey asked if he could take a look. Sandoval replied affirmatively and opened the trunk. Officer Harvey noticed a small duffle bag and two winter jackets. He moved the jackets aside to uncover any hidden weapons. As he moved the jackets, Officer Harvey discovered a circular retaining screw unlike any he had ever seen before in the trunk of an automobile. He then handed Sandoval a copy of the citation. Almost immediately, Officer Harvey asked Sandoval for permission to search the car while simultaneously waving his hand over the trunk. Sandoval responded, "Sure, go ahead." Officer Harvey proceeded to

---

[2] Sandoval argues that continued detention must be based on an officer's reasonable suspicion of a particular criminal activity. He further argues that the officer must have suspected possession of narcotics, which was not supported by the facts, because the car had not been reported stolen. This court need not address the issue of whether a reasonable suspicion determination needs to be tied to a specific criminal activity. The facts, as discussed *supra*, supported Officer Harvey's reasonable suspicion of illegal activity that warranted further questioning about the vehicle's proper owner and Sandoval's possession of contraband or weapons.

search the trunk, Sandoval's luggage, and the tire well. This search produced the evidence Sandoval seeks to suppress.

Whether Sandoval knowingly and voluntarily consented to either the initial or subsequent search is a question of fact. [3] *See Patten*, 183 F.3d at 1194. The district court found that Sandoval's detention, which lasted from the moment he was stopped until the moment he was handed the citation, was lawful. Because the district court found that the detention was lawful, it necessarily must have found that Sandoval consented to the initial search of the trunk. Additionally, the district court found that after Officer Harvey handed the citation to Sandoval, the encounter became consensual and Sandoval gave voluntary consent to the second search of the trunk.

To establish voluntary consent, the government bears the burden of proving "that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." *Soto*, 988 F.2d at 1557. On similar facts in *Soto*, this court upheld the district court's finding of voluntary consent. *See id.* at 1558. Like the officer in

---

[3] Although the evidence Sandoval seeks to exclude was not discovered until the second search, the lawfulness of the first search impacts the analysis this court must undertake. If Officer Harvey's initial search of the trunk was illegal, we must either conduct a taint analysis or remand to the district court for such an analysis. *See United States v. Fernandez*, 18 F.3d 874, 881 & n.7 (10th Cir. 1994). Because the initial search was consensual, this court does neither.

*Soto,* Officer Harvey "did not unholster his weapon, did not use an insisting tone or manner, did not physically harass [Sandoval], and no other officers were present. Further, the incident occurred on the shoulder of an interstate highway, in public view." *Id.* Officer Harvey asked for permission to look in the trunk before both searches. Sandoval testified at the suppression hearing that he gave an affirmative response to Officer Harvey's initial request before proceeding to open the trunk himself. Officer Harvey testified that Sandoval responded affirmatively to the second request as well.

Sandoval argues on appeal, however, that his consent to search was not freely given either before or after Officer Harvey gave him a copy of the citation. He claims Officer Harvey accused him of lying and used a raised tone of voice during their interaction. Further, Sandoval asserts that his inability to leave the encounter before being given the citation and Officer Harvey's failure to tell Sandoval that he was free to leave once he was given the ticket militate against a finding of voluntary consent.

Sandoval's consent to the initial search is not vitiated simply because he did not have a copy of his citation at the time of consent. Even a person being detained can consent to a search. *See United States v. Doyle*, 129 F.3d 1372, 1377 (10th Cir. 1997). Moreover, Officer Harvey was not obligated to inform Sandoval that he was free to leave once the detention was over and before

-11-

Sandoval gave consent to the second search, particularly when the officer exercised no coercion or duress. *See Elliott*, 107 F.3d at 814. Having carefully reviewed the videotape and record, this court rejects Sandoval's assertions and concludes that the district court properly found that Sandoval voluntarily consented to a search of the vehicle's trunk.

IV. CONCLUSION

This court concludes the district court properly denied Sandoval's motion to suppress cocaine seized by Officer Harvey during a traffic stop. The officer objectively possessed reasonable and articulable suspicion that Sandoval was engaged in an illegal activity. Further, Sandoval voluntarily consented to both the initial search and the search that produced the cocaine. Accordingly, this court **AFFIRMS**.

ENTERED FOR THE COURT:

Michael R. Murphy
Circuit Judge