**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DAVID GEORGE KRAMER,

     Defendant-Appellant.

No. 97-2289

---

**Appeal from the United States District Court**
**for the D. N.M.**
**(D.C. No. CR-96-337-BB)**

---

Vera S. Ockenfels, Albuquerque, New Mexico, for Defendant-Appellant.

Sasha Siemel, Assistant United States Attorney (John J. Kelly, United States Attorney and Mary L. Higgins, Assistant United States Attorney), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **ANDERSON , McKAY** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

     Defendant-Appellant David George Kramer appeals the district court's denial of his Fed. R. Crim. P. 32(e) motion to withdraw his guilty plea. Kramer contends that his guilty plea was involuntary. He asserts that he was ill when his

plea was taken and consequently did not understand the ramifications of his plea; he further contends that his trial counsel was ineffective in failing to investigate adequately the facts of his case before his plea or trial. Because we believe that appellant failed to meet his burden under Fed. R. Crim. P. 32(e) of establishing that there was a "fair and just reason" for allowing withdrawal of his guilty plea, we affirm the judgment of the district court.

## BACKGROUND

In 1993, Kramer offered for sale three Native American items – a prayer stick bundle containing bird feathers, a sun disk, and a tablita – at the Albuquerque Antique Connection, a consignment store in Albuquerque, New Mexico. At that time, Kramer had been selling Native American items for over 20 years.

Religious leaders from Jemez Pueblo, New Mexico, identified the prayer stick bundle, the sun disk, and the tablita as belonging to the Pueblo; none of the three items had been released to anyone in accordance with Jemez Pueblo tribal law. All three items were considered religious and cultural objects bearing significant ritual status.

Based on these facts, Kramer was charged on June 6, 1996 with violating 16 U.S.C. §§ 703, 707(a), and 707(b)(2) (Migratory Bird Treaty Act) (Counts I

and IV); 18 U.S.C. § 1170 and 25 U.S.C. §§ 3001(3)(D) and 3002(c) (Illegal Trafficking in Native American Items) (Counts II-III); and 16 U.S.C. § 668 (Bald and Golden Eagle Act) (Count V). Kramer's original counsel withdrew shortly after arraignment, and on August 1, 1996, the district court appointed Kramer another attorney. Between August 1996 and January 1997, the case was set once for a change of plea hearing, and was thereafter set for trial five times, the last date set for January 13, 1997. During that period, Kramer's second counsel, Armando Torres, filed three motions to suppress and submitted both voir dire questions and jury instructions. Torres also moved to withdraw as counsel in November 1996 on grounds that the attorney-client relationship had collapsed. The trial court denied Torres' motion to withdraw because no other attorney could be found who could try the case by January 1997.

On January 8, 1997, a superseding indictment was returned, adding language regarding the bird feathers relevant to Count I. Kramer was arraigned on the superseding indictment on January 13, 1997, the same date his case was set for hearing on his motions and for trial. However, instead of proceeding to trial, Kramer entered a plea of guilty to Count II of the superseding indictment, which charged him with a misdemeanor violation of 18 U.S.C. § 1170 (illegal trafficking in Native American cultural items). As part of the plea agreement, all remaining counts were dismissed.

- 3 -

During the trial court's inquiry pursuant to Fed. R. Crim. P. 11, Kramer was asked whether he had taken any narcotic drugs or medications before the hearing. Kramer testified that he had taken Percodan,[1] but acknowledged that this medication did not impair his ability to understand the proceedings. He further testified that he understood his right to a trial, that he understood the charge and had discussed it with his attorney, and that he was willing to waive his rights associated with a trial. As the trial court proceeded with its Rule 11 protocol, the following exchange took place between the court and Kramer:

> Q. All right. You don't dispute that these were sacred objects that you were offering for sale at the Antique Mall?
> A. Patrimony items, as opposed to sacred, I believe.
> Q. You don't dispute they were patrimony items?
> A. I believe anything handled by or touched or offered by a Native American is "quote" from their society, and, therefore, their spiritual realm has context to each and every item, whether it be contemporary or 200 years old. It doesn't make any difference.
> Q. All right. I sense some doubt. Do you in any way have any reservations about pleading guilty to this charge? You need to plead guilty voluntarily and knowingly. I don't want you to be coerced or plead guilty if you don't think you are guilty. If you want to go to trial, you have the right to do that. You understand?
> A. Under the circumstances, it wouldn't behoove the Government or myself to proceed outside of my plea of guilty.
> Q. So you wish to plead guilty to Count II?
> A. Yes.
> Q. I will accept the plea of guilty and enter a judgment thereon. I'll find that the plea is free and voluntarily made. The defendant

---

[1]It was later clarified during Kramer's Motion to Withdraw Plea that he had taken Prednisone, not Percodan.

understands the charges and the penalties, and the plea agreement has been properly executed and it will be filed.

(Plea Tr. at 16-17.)

Following the plea hearing, Torres was allowed to withdraw as defense counsel, and counsel from the Federal Public Defender's office was appointed for sentencing, which was scheduled for June 20, 1997.

On June 17, 1997, newly appointed counsel filed, at Kramer's direction, a Motion to Withdraw Plea pursuant to Fed. R. Crim. P. 32(e), asserting that the guilty plea had been involuntary. The grounds for the motion were set forth in a document written by Kramer, which stated that 1) federal and state laws failed to address the charge to which he pleaded guilty as a criminal offense; 2) federal and state laws failed to assess a penalty for violation of the charge to which he pleaded guilty; 3) the sentence contemplated by the plea agreement was unauthorized; 4) his plea was involuntary because of extreme duress, a serious illness at the time of the plea, and the coerciveness inherent in counsel's failure to prepare a defense.

On June 20, 1997, the district court heard testimony from Kramer in support of his motion to withdraw, as well as oral argument from counsel. Kramer testified that he had been so ill during the plea hearing that he had not known "in-depth" what was happening; that he had been "a zombie" and "just could see what was in front of [him]." To corroborate his claim, Kramer testified

that he was taking several medications on the plea date (including an antibiotic, an antihistamine, and a steroid) and that he had gone to Santa Fe immediately after the plea to see a doctor. He also noted that he had been allowed to sit throughout the plea proceedings, ostensibly because of his weakened condition. Counsel pointed to the presentence report, in which Kramer had reported to the probation officer that his health was "terrible," that he suffered from bronchial asthma, that he had a chest infection, and that he was taking several medications.

Kramer further testified that he had experienced difficulties with Torres, his (second) court-appointed counsel, in that Torres had failed to return phone calls, failed to perform legal research and present arguments that Kramer felt were relevant to his case, and failed to investigate the facts of his case before trial.

Other than his testimony during the hearing on his withdrawal motion, Kramer offered no evidence in support of his arguments that he had been unable to comprehend the ramifications of his plea or that his counsel had been ineffective.

The government opposed Kramer's motion, contending that it had been prepared to go to trial on January 13, 1997, and that recalling witnesses, including one from out of state, would create some inconvenience. The government further

objected that Kramer's delay in filing his motion to withdraw until three days before sentencing was inexplicable and prejudicial to the government.

The district court ruled that Kramer's plea had been knowing and voluntary, and that Kramer had received the assistance of competent counsel. Noting that one prior plea hearing had been vacated, and that the case had been set for trial five times, the court concluded that Kramer was "attempting to play yo-yo with the court" and "trying to perpetrate an injustice on the judicial system." The court found that allowing Kramer's motion to withdraw his plea and proceed to trial would be prejudicial to the government, an inconvenience to the court, and a waste of judicial resources. It therefore denied Kramer's motion to withdraw his plea and sentenced Kramer to three years' probation.

## DISCUSSION

Kramer argues on appeal that his plea was entered involuntarily due to a combination of his extreme illness and his counsel's ineffective representation. He submits that, given his testimony with respect to these two issues, the trial court should have allowed him to withdraw his plea.

A. Voluntariness of the guilty plea

We review the voluntariness of a guilty plea de novo. United States v. Carr, 80 F.3d 413, 416 (10th Cir. 1996). The test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice

among the alternative courses of action open to the defendant.'" Id. (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)).

The record simply does not support Kramer's claim that his decision to plea was less than a voluntary and intelligent choice. Kramer signed a plea agreement in which he agreed to plead guilty to a misdemeanor violation in exchange for the government's agreement to dismiss the remaining counts. The trial court conducted a thorough inquiry at Kramer's plea hearing, during which Kramer affirmed that he understood what was happening; that he had discussed the case with his attorney; that he understood the charge to which he was pleading guilty; that he understood the possible penalties; and that he understood he was waiving his trial-related rights. Additionally, Kramer denied that anyone had threatened or coerced him to plead guilty.

Kramer's contention that his plea was not knowing and voluntary due to his extreme illness lacks merit. Beyond his statements at the hearing on his motion to withdraw the plea, Kramer offered no evidence (such as medical records or narcotic drug prescriptions or doctors' affidavits) to support his assertion that he was too ill to understand "in-depth" what was happening when he pleaded guilty. His conclusory statements regarding his acute illness are, absent any other evidence, insufficient to show that his plea was involuntary.

Kramer's contention that his trial counsel's ineffective assistance resulted in an involuntary guilty plea is likewise unpersuasive.[2] The two-pronged test for evaluating ineffective assistance claims, set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), also applies to challenges to guilty pleas. <u>See</u> <u>Carr</u>, 80 F.3d at 417. A defendant must show 1) that his counsel's performance fell below an objective standard of reasonableness; and 2) that counsel's deficient performance was prejudicial. <u>See</u> <u>Strickland</u>, 466 U.S. at 688, 692. To show prejudice in the guilty plea context, the defendant must establish that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>See</u> <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993). Kramer has failed to make either <u>Strickland</u> showing.

_____

[2]Ordinarily the preferred avenue for challenging the effectiveness of counsel in a federal criminal case is via collateral attack, because ineffectiveness claims often require consideration of evidence not yet in the record on direct appeal. <u>See</u> <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993). However, we will entertain such claims on direct appeal in cases such as this, where the record is sufficiently developed on the issue, where the defendant is represented by different counsel on appeal, and where the claim merits no further factual inquiry. <u>See</u> <u>id.</u> at 1569-70. Moreover, the district court in this case addressed this claim in the context of Kramer's motion to withdraw plea, and concluded that Kramer had in fact received effective assistance. Thus, the concerns that ordinarily counsel against review of ineffectiveness claims on direct appeal are not present in this case.

Kramer asserts that Torres was ineffective in that he did not investigate or present legal arguments that Kramer believed were relevant to his defense, leading him to believe that he had no choice but to plead guilty. Specifically, Kramer maintains that Torres did not investigate whether the items listed in the indictment were of "cultural patrimony," as defined in 25 U.S.C. § 3001(3)(D). He further contends that Torres did not investigate whether the district court had subject matter jurisdiction over the government's prosecution of his alleged violation of the Native American Graves Protection and Repatriation Act ("NAGPRA" or "the Act"), as the spirit of NAGPRA, Kramer submits, is to assure the return of cultural items from federal agencies and museums, not from individuals. Both arguments are legally meritless.

Kramer pleaded guilty to a misdemeanor violation of 18 U.S.C. § 1170(b), which makes it unlawful to knowingly sell, purchase, use for profit, or transport for sale or profit any Native American cultural items obtained in violation of NAGPRA, 25 U.S.C. §§ 3001 et seq. NAGPRA defines "cultural items" to include items of "cultural patrimony," which means objects

> having ongoing historical, traditional, or cultural importance central to the Native American group or culture itself, rather than property owned by an individual Native American, and which, therefore cannot be alienated, appropriated, or conveyed by any individual regardless of whether or not the individual is a member of the Indian tribe . . . .

25 U.S.C. § 3001(3)(D).

Kramer argues that Torres should have challenged the government's ability to prove that the items were of "cultural patrimony" as defined in NAGPRA. However, Kramer did not dispute that they were patrimony items in response to the court's inquiry at the plea hearing[3]; and Kramer offers no evidence now to support his assertion that the items were not communally owned. In addition, the government informed the district court at the plea hearing that had the case gone to trial, Jemez tribal witnesses would have testified that the items were authentic tribal cultural and religious items and were considered inalienable objects. Defendant has made no credible showing that he was innocent of the charge on this ground, and therefore it would have been fruitless for his counsel to have raised the issue.

Kramer also appears to argue that because the provisions of NAGPRA refer repeatedly to federal agencies and museums, the Act was not intended to apply to individuals such as himself. It is true that Congress enacted NAGPRA to protect Native American human remains, funerary objects, sacred objects, and objects of cultural patrimony, and to repatriate such objects currently held or controlled by federal agencies and museums. See United States v. Corrow, 119 F.3d 796, 799-800 (10th Cir. 1997)(citing H.R. Rep. No. 101-877 (1990), reprinted in 1990

---

[3]In fact, when the court asked whether Kramer disputed that the items he offered for sale were "sacred objects," Kramer corrected the court by responding, "Patrimony items, as opposed to sacred, I believe." (Plea Tr. at 16.)

U.S.C.C.A.N. 4367, 4368), <u>cert. denied</u>, 118 S. Ct. 1089 (1998). However, "to give teeth to this statutory mission," section 4 of NAGPRA amended Title 18 of the United States Code to criminalize trafficking in Native American human remains and cultural items, in an effort to eliminate the profit incentive perceived to be a motivating force behind the plundering of such items. <u>See</u> <u>id.</u>; <u>see also</u> Sherry Hunt, <u>Illegal Trafficking in Native American Human Remains and Cultural Items: A New Protection Tool</u>, 24 Ariz. St. L.J. 135, 135 & n.3 (citing <u>Hearings on S. 1021 and S. 1980 Before the Sen. Select Comm. on Indian Affairs</u>, 101st Cong., 2d Sess. 69 (1990) (statement of Keith Kintigh)). It is clear that the criminal provision, 18 U.S.C. § 1170(b), to which defendant pleaded guilty, encompasses violations by individual traders such as Kramer. <u>See, e.g.</u>, <u>Corrow</u>, 119 F.3d at 804-05 (affirming conviction under § 1170 of individual Native American artifacts trader).

In short, because the legal arguments Kramer contends his counsel should have raised are meritless, Torres' failure to pursue them was neither deficient nor prejudicial under <u>Strickland</u>. We therefore reject Kramer's claim that his guilty plea was involuntary due to his counsel's ineffective assistance.

<u>B. Trial Court's Denial of Kramer's Motion to Withdraw Plea</u>

Fed. R. Crim. P. 32(e) provides that if a defendant moves to withdraw his guilty plea prior to sentencing, "the court may permit the plea to be withdrawn if

- 12 -

the defendant shows any fair and just reason." The burden of demonstrating a "fair and just reason" rests with the defendant. See Gordon, 4 F.3d at 1572.

In Gordon, we set out the relevant considerations for determining whether a defendant has shown a fair and just reason for permitting withdrawal of the defendant's guilty plea: (1) whether the defendant has asserted his innocence; (2) prejudice to the government if the motion is granted; (3) defendant's delay in filing the withdrawal motion; (4) inconvenience to the court if the motion is granted; (5) defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; and (7) the waste of judicial resources. Id.[4]; see also United States v. Killingsworth, 117 F.3d 1159, 1161-62 (10th Cir.), cert. denied, 118 S. Ct. 393 (1997).

We review the district court's denial of Kramer's motion to withdraw his guilty plea for abuse of discretion. See Carr, 80 F.3d at 419. Although a defendant's motion to withdraw a plea before sentencing should be "freely allowed" and "given a great deal of latitude," id., we will not reverse absent a showing that the trial court acted "unjustly or unfairly." Id. Applying the seven factors under Gordon, we believe that Kramer failed to demonstrate a fair and just reason for withdrawal of his plea.

---

[4]Subdivision (e) of Fed. R. Crim. P. 32, which addresses plea withdrawals, was formerly subdivision (d). Gordon was decided prior to this 1994 amendment to Rule 32, and therefore refers to Fed. R. Crim. P. 32(d).

Although Kramer did assert his innocence, his quarrels with the statute, as we have discussed, are unavailing. Moreover, he does not dispute that he offered the items at issue for sale. Taken together, the remaining factors weigh decisively against the defendant: the government would be prejudiced in that it would have to recall its witnesses; the defendant delayed his motion to withdraw until the eve of sentencing, nearly three months after he was appointed his third attorney and five months after pleading guilty; the court would be inconvenienced if this case went to trial, given that it was set for trial five times and Kramer had been appointed three different attorneys as of the time of the withdrawal motion; Kramer received effective assistance from his trial counsel; his plea was knowing and voluntary; and finally, allowing this case to proceed to trial would be a waste of judicial resources, as it is unlikely that a trial would produce a result any different than his plea. In sum, Kramer has failed to demonstrate that the district court acted unjustly or unfairly in denying his motion to withdraw his guilty plea. We find no abuse of discretion.

## CONCLUSION

We hold that Defendant-Appellant Kramer's guilty plea was voluntary and that the district court's denial of Kramer's motion to withdraw his guilty plea was

proper.  Accordingly, the district court's denial of Kramer's motion is

AFFIRMED.