**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 14 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICARDO CORTEZ,

Defendant - Appellant.

No. 00-2460

(D.C. No. CR-99-929-BDB)

(D. New Mexico)

---

**ORDER AND JUDGMENT** *

---

Before **MURPHY** , **ALARCON** ,** and **ANDERSON** , Circuit Judges.

---

Defendant Ricardo Cortez ("Mr. Cortez") pled guilty to one count of

possession with intent to distribute 50 kilograms or more of marijuana in violation

of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C § 2, and was sentenced as a

career offender to 151 months imprisonment and three years supervised release.

Mr. Cortez appeals his sentence, asserting that the district court committed plain

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Arthur L. Alarcon, Circuit Judge, U.S. Court of Appeals,
Ninth Circuit, sitting by designation.

error by failing to grant him a two-level downward departure for "minor participation" under the United States Sentencing Guidelines ("U.S.S.G.") §3B12.1, raising issues related to the effectiveness of his counsel's representation during the plea negotiation process and the validity of the waiver of appeal provision contained in his plea agreement. [1] We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and dismiss, enforcing Mr. Cortez's waiver of appeal.

## FACTS

On May 18, 1999, Mr. Cortez drove a pickup truck into the primary inspection area of the United States Border Patrol checkpoint on Interstate 25, just north of Las Cruces, New Mexico. During a search of the vehicle, the border-patrol agents uncovered 64 bushels of marijuana. Waiving his right to a preliminary hearing and his right to have his case presented to a grand jury, Mr. Cortez pled guilty to an information charging him with possession with intent to distribute 50 kilograms or more of marijuana, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.

---

[1]Mr. Cortez further asserts that his counsel at sentencing, Stephen Stevers, was ineffective in failing to object to the alleged error by the district court, or request that the district court apply the departure. As discussed below, see infra note 10, we dismiss this claim because it is not reviewable on direct appeal. See United States v. Galloway, 32 F.3d 499, 501 (10th Cir. 1994).

## A.    Plea Agreement

Mr. Cortez's plea agreement contained a number of provisions relevant to the issues raised on appeal.  First, it informed Mr. Cortez that "the maximum penalty the Court can impose is . . . imprisonment for a period not greater than twenty (20) years."  Plea Agreement at 2, ¶ 4(a), R. Vol. I, Doc. 17.  Second, it informed Mr. Cortez that sentencing would be completely within the discretion of the trial judge under the sentencing guidelines.    Id. at 2-3, ¶ 5.  In this regard, Mr. Cortez expressly acknowledged, by signing the agreement, that no one, not even his attorney, could "predict with certainty" what guideline range would be applicable or what sentence the court might impose.    Id.  He also expressly waived any right to withdraw his plea in the event the court imposed a higher guideline or sentence than he expected.    Id.  Third, the agreement stated that the government agreed to no particular sentence, and would simply provide any and all relevant information to the United States Probation Office so that a designated probation officer could prepare the required presentence report and make a final sentencing recommendation.    Id. at 3, ¶¶ 6(a)-(c).  Fourth, although the government stipulated that Mr. Cortez was entitled to a downward departure for acceptance of responsibility and minor participation, the agreement expressly stated that these stipulations were in no way binding on the court, that the court could refuse to apply either or both of the departures at its discretion, and that by

entering into the agreement Mr. Cortez was waiving his right to appeal in the event the court did in fact refuse either or both of the recommended departures. Id. at 4, ¶¶ 7-8. Fifth, the plea agreement affirmed that Mr. Cortez freely and voluntarily entered into the agreement, without any coercion and without relying on any promises regarding the sentence the court would impose. Id. at 6, ¶ 13. Sixth, and most important for this appeal, the plea agreement contained the following comprehensive waiver of appeal provision:

> The defendant is aware that Title 18, United States Code, § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the applicable guideline range as determined by the court after resolution of any objections by either party to the presentence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the court in resolving any contested sentencing factor. In other words, the defendant waives his right to appeal the sentence imposed in this case except to the extent, if any, that the court may depart upwards from the applicable sentencing guideline range as determined by the court.

Id. at 5, ¶ 10 (emphasis added).

### B. Plea Hearing

Magistrate Judge Joe E. Galvan held a hearing regarding Mr. Cortez's plea on August 17, 1999. At this hearing, Magistrate Judge Galvan conducted a thorough colloquy pursuant to the requirements of Rule 11 of the Federal Rules of

Criminal Procedure ("Rule 11"), [2] fully explaining all of the relevant portions of the plea agreement discussed above. Tr. of Plea Hearing at 5-10, attached to Appellee's Answer Br. In response to questions by Magistrate Judge Galvan, Mr. Cortez affirmed that he understood and agreed to all of the relevant terms of the agreement. Id. Of particular relevance, Mr. Cortez affirmed that he understood that the government was making "no agreement as to what the appropriate or specific sentence" would be, and that the appropriate sentence to impose, and the appropriate departures, if any, to grant, would be left to the sole discretion of the court. Id. at 5-8. He further affirmed that he was not relying on any promises from anyone in entering the agreement, he voluntarily signed the agreement, his attorney explained the agreement to him, and that he fully understood the terms of the agreement. Id. at 5, 9-11. Finally, Mr. Cortez affirmed his understanding that as a result of his plea he could face "up to 20 years' imprisonment, up to a $1 million fine, a mandatory term of supervised release not less than three years, and a $100 special penalty assessment." Id. at 3-4.

---

[2]At the sentencing hearing held on September 29, 2000, Mr. Cortez's counsel acknowledged that Magistrate Judge Galvan was "very thorough about going through the colloquy on the plea." Tr. of Sentencing Proceedings at 9, R. Vol. III.

## C.    Sentencing

A presentence report was submitted to the district court on October 7, 1999, with copies to the parties.  Presentence Report at 1, R. Vol. II.  The presentence report recommended that Mr. Cortez be sentenced as a career offender, relying on a 1983 conviction for the unlawful delivery of marijuana, for which Mr. Cortez was sentenced to nine years in prison, and a 1984 conviction for, among other things, the assault upon and kidnaping of a federal officer, for which Mr. Cortez was sentenced to twenty-three years in prison.      Id.  On February 14, 2000, after learning of his potential to be sentenced as a career offender, Mr. Cortez filed a motion for a downward departure, asserting that he was not aware that he could be eligible for career offender status at the time he entered the plea agreement, and that the presentence report over-represented the seriousness of his criminal history by including the seventeen-year-old conviction for distribution of marijuana.  Sentencing Mem. and Inc. Mot. for Downward Departure at 1-2, R. Vol. I, Doc. 23.  On August 21, 2000, Mr. Cortez also filed a      *pro se* motion to withdraw his guilty plea, asserting that the plea was involuntary because he entered it unaware that he could qualify as a career offender and in reliance upon the promises of his attorney that he would receive no more than three years

imprisonment on the charge. [3] Tr. of Sentencing Proceedings at 15, 19-21, R. Vol. III.

On September 29, 2000, a sentencing hearing was held before Judge Monti L. Belot. During this proceeding Judge Belot denied both of Mr. Cortez's motions. Regarding Mr. Cortez's motion to withdraw his plea, the district court solicited testimony from Jane Greek, Mr. Cortez's attorney at the time of the plea negotiations. Ms. Greek testified, in relevant part, as follows:

> The Court: Mr. Cortez said you promised him a 30- to 33- month sentence at the time of --
>
> Ms. Greek: I did not do that.
>
> The Court: What happened?
>
> Ms. Greek: Because of the way Mr. Cortez's criminal record, as I understood it, was, I did not realize, at the time we were initially discussing the plea, that he is a career offender. He had a 17-year-old cap for a marijuana possession. I did not realize that brought him at that time -- I did not realize that brought him within the 15-year window for the career offender, for the applications to apply.
>
> . . . . So I advised him that I believed it would be 30 to 37 months with my understanding of his criminal record at that time, but that if the record turned out to be different than what I understood, the guideline would be different.

Tr. of Sentencing Proceedings at 17-18. After hearing Ms. Greek's testimony, Judge Belot denied the motion, apparently finding Ms. Greek's testimony more

---

[3]Mr. Cortez originally filed a motion to withdraw his plea through counsel on February 14, 2000, but this motion was voluntarily withdrawn on August 7, 2000. See Tr. of Sentencing Proceedings at 19-20, R. Vol. III.

credible than that of Mr. Cortez, and apparently concluding that nothing Ms. Greek told Mr. Cortez during the plea negotiations rendered the plea agreement involuntary or otherwise invalid.      Id. at 21.

Regarding Mr. Cortez's motion for downward departure, Judge Belot concluded that although "it can be argued that one of these previous convictions on which the career offender status is predicated [i.e., the conviction for unlawful distribution of marijuana] might arguably be a not-very-serious conviction," the seriousness of the other offense, i.e., the kidnaping of and assault upon a federal officer, nevertheless required application of the career offender status.      Id. at 13-15.  Specifically, Judge Belot found that "[Mr. Cortez] aided and abetted . . . in the murder of a federal officer by participation in the kidnaping of a federal officer," and that it was therefore appropriate to include the distribution of marijuana offense in the calculation and sentence Mr. Cortez as a career offender. Id. at 14.

Having denied both of Mr. Cortez's motions, Judge Belot applied an offense level of 29 and a criminal history category of six, sentencing Mr. Cortez to 151 months imprisonment, at the bottom of the applicable guideline range. [4] Id. at 22, 23-24.  In doing so, Judge Belot granted Mr. Cortez the three-level

---

[4]This constitutes a sentence of twelve years and seven months, well below the 20-year statutory maximum Mr. Cortez was advised he could receive on the charge.

departure for substantial assistance under U.S.S.G. §3E1.1, but not the two-level departure for "minor participant" under U.S.S.G. §3B1.2. Judge Belot did not explain his reasoning for refusing the "minor-participant" departure, and Mr. Cortez's counsel, Mr. Stevers, did not object or otherwise request the departure. [5]

## DISCUSSION

Mr. Cortez appeals his sentence, asserting that the district court erred in failing to apply a two-level departure for "minor participation." Because we believe that Mr. Cortez knowingly and voluntarily waived his right to appeal his sentence, and that this waiver is fully enforceable, we dismiss his appeal without discussing the merits, if any, of his substantive claims of error by the district court. We now proceed with our waiver analysis.

---

[5]Judge Belot specifically adopted the findings and sentencing calculations contained in the presentence report. Judgment at 5, R. Vol. I, Doc. 46. Although the presentence report acknowledged the government's stipulation that Mr. Cortez was entitled to a departure for "minor participant," Presentence Report at 4, ¶¶ 13, R. Vol. II, the report's final recommendation and sentencing calculation included only the departure for acceptance of responsibility, without any explanation. Id. at 10, ¶ 47. Mr. Stevers never objected to the failure of the probation officer to include the "minor participant" departure in the final calculations and recommendations of the presentence report, or otherwise request the district court to apply the departure. On appeal, Mr. Cortez asserts that Mr. Stevers was ineffective. For the reasons discussed below, we dismiss this claim, holding that it is not reviewable on direct appeal. See infra Section B and note 10.

This circuit has long recognized that a defendant should be held strictly to the terms of a lawful plea agreement. United States v. Atterberry, 144 F.3d 1299, 1300 (10th Cir. 1998). As such, we generally enforce a defendant's knowing and voluntary waiver of his or her statutory right to appeal. Id.[6] Nevertheless, we recognize that "[a]ppellate waivers are subject to certain exceptions," such as "where the district court relied on an impermissible factor such as race, where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, where the sentence exceeds the statutory maximum, or where the waiver is otherwise unlawful." United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001) (emphasis added). The ultimate question of whether or not a defendant's wavier was knowing, voluntary and enforceable is a question of law we review *de novo*. United States v. Rubio, 231 F.3d 709, 712 (10th Cir. 2000). Once the existence of a knowing and voluntary waiver of appeal has been established, however, the appeal must be dismissed unless the defendant can demonstrate that the waiver should not be enforced. Atterberry, 144 F.3d at 1300.

---

[6]See also United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001); United States v. Black, 201 F.3d 1296, 1300 (10th Cir. 2000); United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998).

## A.

We first address whether Mr. Cortez's waiver was knowing and voluntary. After reviewing the record, we conclude that there is no evidence to suggest that Mr. Cortez did not knowingly and voluntarily waive his right to appeal. The waiver provision, as well as the rest of the plea agreement, contained clear and concise language adequately informing Mr. Cortez of his right to appeal and of the consequences he faced by agreeing to the waiver provision. It defined in very concise terms the narrow circumstance under which the waiver of appeal did not apply, i.e., where the district court departs upwards from the applicable guideline range, a circumstance that is wholly inapplicable in this case. Magistrate Judge Galvan conducted a thorough Rule 11 colloquy during which Mr. Cortez expressly affirmed that he was entering the plea agreement and waiving his right to appeal with full knowledge and understanding of its terms, and that both the agreement and the waiver were entered into freely and voluntarily, without any coercion or undue influence.

Mr. Cortez's contention that his waiver was involuntary because he relied on the sentencing promises of his attorney is without merit. To begin with, we are persuaded by Ms. Greek's testimony that she made no such promises to Mr. Cortez, that she merely made an educated guess about the possible sentence he could receive based on her understanding of the law and record at the time, and

that she expressly informed Mr. Cortez that her assessment was an opinion, not a guarantee or promise. [7] Additionally, we conclude that Mr. Cortez had no reasonable basis for any reliance on any of the statements Ms. Greek made about the potential sentence he could receive. The agreement itself specifically informed him that he could receive up to 20 years in prison as a result of the plea and that no one, not even his attorney, could predict with any certainty the guideline range or sentence that would be applied by the court. It fully informed Mr. Cortez that the ultimate sentence would be left to the sole discretion of the court, and that he could not reasonably expect to receive any particular sentence. Mr. Cortez expressly affirmed, both by signing the agreement and through his affirmations during the Rule 11 colloquy, that he was not relying on any outside promises or assurances in agreeing to the plea. [8]

---

[7]Indeed, the district court denied Mr. Cortez's motion to withdraw his plea after hearing Ms. Greek's version of the events surrounding the supposed promise of a three-year sentence, apparently finding her more credible than Mr. Cortez, and we give great deference to the district court's credibility determinations on appeal. See United States v. Green, 178 F.3d 1099, 1104 (10th Cir. 1999).

[8]We are also not persuaded by Mr. Cortez's assertion that he did not fully understand the terms of the agreement because he never read it and because his attorney, Ms. Greek, did not have enough time to explain it to him before the plea hearing. See Tr. of Sentencing Proceedings at 16, R. Vol. III. Nonetheless, even if we were to accept Mr. Cortez's assertions as true (which we do not), Magistrate Judge Galvan fully explained its terms, and Mr. Cortez affirmatively represented that he understood and was agreeable to them. If Mr. Cortez really lacked an understanding of the terms of the agreement, he had more than enough opportunity to inform Magistrate Judge Galvan of that fact before he entered his

(continued...)

-12-

In light of the foregoing discussion, we hold that Mr. Cortez knowingly and voluntarily waived his right to appeal.

**B.**

Relying on the limited exceptions to the general enforceability of appellate waivers, Mr. Cortez contends that even if his waiver was knowing and voluntary, it is nevertheless unenforceable. First, he contends that the waiver should not be enforced because he agreed to the plea, and thus the waiver, solely as a result of his counsel's ineffective assistance in assuring him that he would not be sentenced to more than three years. Def.-Appellant Cortez's Opening Br. at 13, 24-25. Second, he contends that the waiver is "unlawful" and unenforceable because the plea agreement did not contain a statement about the specific sentence or sentencing range that would be applied. Id. at 13, 14-17. We reject both of Mr. Cortez's contentions in turn and hold that his waiver is fully enforceable. [9]

---

[8](...continued)
plea.

[9]Parenthetically, we note the overall inequity in Mr. Cortez's arguments on appeal. Mr. Cortez does not appeal the district court's denial of his motion to withdraw his plea or seek a remand for trial. He seeks only a remand for resentencing. In doing so, Mr. Cortez asserts deficiencies that would impact the validity of the plea agreement as a whole, not deficiencies specific only to the waiver provision. The parties apparently agree that if Mr. Cortez were to be

(continued...)

-13-

1. *Ineffective Assistance of Counsel "In Connection With The Negotiation of the Waiver."*

It is a well established rule in this circuit that "'[t]he preferred avenue for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack under 28 U.S.C. § 2255." United States v. Galloway, 32 F.3d 499, 501 (10th Cir. 1994) (quoting Beaulieu v. United States, 930 F.2d 805, 806 (10th Cir. 1991)). This rule applies with equal force in cases where there was no criminal trial and the defendant challenges only the effectiveness of his counsel during the plea bargaining process. United States v. Kramer, 168 F.3d 1196, 1200 n. 2 (10th Cir. 1999). This general rule would ordinarily require Mr. Cortez to bring his ineffective assistance claims involving the representation of Ms. Greek in a collateral proceeding under 28 U.S.C. § 2255. However, Mr. Cortez argues that direct appellate review of his "narrow ineffectiveness claims" is appropriate in this case because there is a "sufficiently developed" record and the issues raised are "primarily legal" in nature. Def.-Appellant Cortez's Opening Br. at 23

---

[9](...continued)
convicted at full trial, he would be subject to at least 210 months in prison. See Tr. of Sentencing Proceedings at 11-12, 17. It seems clear that Cortez is attempting to rely on deficiencies in the plea agreement to avoid the waiver, while simultaneously seeking to avoid trial with its potentially more devastating consequences. Thus, even if we were to find in favor of Mr. Cortez on his claims, which we do not, we would have no choice but to invalidate the entire plea agreement and remand the case for trial.

n. 6 (citing Kramer, 168 F.3d at 1201 n. 2; Galloway, 32 F.3d at 502). On the particular facts of this case, we agree.

Mr. Cortez's appellate counsel is not the target of his ineffective assistance claims and there was a sufficient record developed in the proceedings below to eliminate the need for further factual inquiry. Specifically, the district court heard evidence on Mr. Cortez's claim that Ms. Greek was ineffective in her representation of Mr. Cortez during the plea negotiation process as part of Mr. Cortez's motion to withdraw his plea. The district court took testimony from both Ms. Greek and Mr. Cortez on the key issue raised by Mr. Cortez in attempting to invalidate the waiver, i.e. whether Ms. Greek promised Mr. Cortez a three-year sentence to induce his assent to the waiver. Although the district court denied Mr. Cortez's motion to withdraw his plea without making any specific findings, the district court established a sufficient record from which we may review Mr.

Cortez's ineffective assistance claims on direct appeal. [10] We therefore proceed

with that analysis.

The two-pronged test for evaluating ineffective assistance claims set forth

in Strickland v. Washington , 466 U.S. 668 (1984), applies not only where a

defendant challenges his conviction at trial, but also where a defendant claims

that he or she entered a guilty plea based on the ineffective assistance of his or

her counsel. Kramer , 168 F.3d at 1201. Under this test, the defendant must

demonstrate (1) that counsel's performance fell below a standard of objective

reasonableness, and (2) that counsel's deficient performance was prejudicial. If

---

[10]Mr. Cortez asserts that his other ineffective assistance claim, regarding the representation of Mr. Stevers at sentencing, is also reviewable on direct appeal. With this contention, however, we must disagree. Although Mr. Stevers does not represent Mr. Cortez on appeal, Mr. Cortez's complaints against Mr. Stevers were not raised below and thus there was no record developed by the district court on these claims. A collateral proceeding is therefore necessary to establish why Mr. Stevers did not request the application of the minor participation departure during the sentencing hearing, or object to the failure of the probation officer to include the departure in the presentence report's final sentencing calculations, whether his actions in this regard were objectively reasonable, and whether Mr. Cortez was in fact prejudiced by such actions. Accordingly, we dismiss Mr. Cortez's appellate claim regarding the representation of Mr. Stevers, noting, however, that Mr. Cortez's waiver of appeal does not prevent him from asserting ineffective assistance claims against Mr. Stevers in a subsequent collateral proceeding under 28 U.S.C. § 2255. See United States v. Cockerham, 237 F.3d 1179, 1184 (10th Cir. 2001) (waiver of appeal in plea agreement does not extend to collateral proceedings under 28 U.S.C. § 2255 unless the agreement expressly extends the waiver to such proceedings); Appellee's Answer Br. at 28 n. 10 ("In his plea agreement, Cortez did not waive his right to challenge his sentence through collateral proceedings).

the defendant fails to satisfy either of these required elements, his ineffective assistance claim must fail.     Strickland , 466 U.S. at 697.

In the instant case, defendant failed to demonstrate that Ms. Greek's representation fell below the standard of reasonableness.     [11] "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances,"     Kimmelman v. Morrison , 477 U.S. 365, 381 (1986),     [12] and we apply a strong presumption that counsel's performance was not ineffective and that it fell "'within the wide range of reasonable professional assistance.'"     United States v. Clonts   , 966 F.2d 1366, 1370 (10th Cir. 1992) (quoting     Strickland , 466 U.S. at 689).  We give great deference to the decisions of counsel,     Kimmelman , 477 U.S. at 381, and the defendant therefore shoulders a heavy burden in attempting to overcome this presumption of reasonableness.

Viewing the circumstances at the time of the plea negotiations, we conclude that Ms. Greek's conduct in representing Mr. Cortez was objectively reasonable.

---

[11]Because we conclude that Mr. Cortez failed to demonstrate that Ms. Greek's performance "fell below a standard of objective reasonableness," we need not address the prejudice prong of the Strickland test.

[12]See also United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997) (noting that "the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error," and that "every effort should be made to "eliminate the distorting effects of hindsight") (internal citations and quotations omitted).

As discussed above, see supra Section A, there is no evidence that Ms. Greek actually promised or assured Mr. Cortez he would be sentenced to only three years in jail. She merely gave him a reasonable, good faith opinion based on the record and law as she understood them at the time, specifically informing Mr. Cortez that there were no guarantees. Her opinion was based on her understanding that Mr. Cortez's seventeen-year-old conviction for the unlawful delivery of marijuana would not be included in his criminal history calculation, and although her legal conclusions in this regard turned out to be erroneous, they were not unreasonable. The district court recognized that there was a good argument that the conviction for unlawful delivery of marijuana would ordinarily be too tenuous to count against Mr. Cortez, and exercised its discretion to include the offense in the criminal history calculation only because of the seriousness of Mr. Cortez's other conviction for the kidnaping of and assault upon a federal officer. It was entirely reasonable for Ms. Greek to provide Mr. Cortez a good-faith estimate of the potential sentence he could receive, particularly given the fact that she warned him that her opinion could be wrong and that sentencing remained in the sole discretion of the judge. As such, we hold that Ms. Greek's representation of Cortez during the plea negotiation was not ineffective and reject Mr. Cortez's claims to the contrary.

*2. Failure to Specify a Particular Sentencing Range.*

Our circuit recognizes that Rule 11 distinguishes between those plea agreements which must identify a particular sentence and those which leave the issue of sentencing to the district court, holding that while agreements entered into pursuant to Rule 11(e)(1)(C) must specify a particular sentence or sentencing range, those entered into pursuant to Rule 11(e)(1)(B) need not. United States v. Rubio, 231 F.3d 709, 712 (10 <sup>th</sup> Cir. 2000). The distinction is based on the difference in the provisions themselves. Specifically, Rule 11(e)(1)(C) is absolutely binding on the court once it is accepted, and thus this section expressly requires the government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case." See also Rubio, 231 F.3d at 712. In contrast, Rule 11(e)(1)(B) allows the government to "recommend, or agree not to oppose the defendant's request for a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case," and expressly states that "[a]ny such recommendation or request is not binding on the court." See also Rubio, 231 F.3d at 712.

Mr. Cortez's agreement falls squarely under Rule 11(e)(1)(B). Although it contained stipulations between Mr. Cortez and the government regarding the applicability of certain downward departures, it expressly stated that such "stipulations are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court. . . ." Plea Agreement at 5, ¶ 8, R. Vol. I, Doc. 17. It further stated that "[t]he defendant fully understands that determination of the sentencing range or guideline level, as well as the actual sentence imposed, is solely in the discretion of the Court." Id. at 3, ¶ 5. As such, the agreement did not need to specify a particular sentence or sentencing range, and its failure to do so did not render the waiver of appeal provision, or the plea agreement as a whole, "unlawful" or unenforceable. [13]

---

[13]Mr. Cortez asserts that our holding in Rubio should apply only to cases involving the validity of plea agreements in general, and not to cases challenging the validity of a specific waiver provision contained in such an agreement. Def.-Appellant Cortez's Reply Br. at 5-6. He argues that a defendant cannot knowingly waive his right to appeal a sentence where there is no specific sentence stated. We disagree and see no reason to make the distinction proposed by Mr. Cortez. In assessing whether an appellate waiver provision in a plea agreement was voluntarily and knowingly entered into, the key question is simply whether the defendant knew what he was agreeing to and was aware of the potential risks. Here, Mr. Cortez knew that he was entering into a plea agreement that did not contain a specific sentence, leaving the ultimate sentence (up to the twenty-year statutory maximum) to the sole and absolute discretion of the judge. He was fully aware of the risks and nevertheless agreed to waive his right to appeal.

**CONCLUSION**

Based on the foregoing, we enforce Mr. Cortez's knowing and voluntary wavier of his right to appeal his sentence and DISMISS his appeal in its entirety.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge