**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DANNY CERVANTES,

    Defendant - Appellant.

No. 03-2229
(D.C. No. CR 01-1309)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY** and **LUCERO**, Circuit Judges, and **FIGA**, District Judge.[**]

---

Pursuant to a plea agreement, Danny Cervantes pled guilty to a one count indictment charging possession of more than 100 kilograms of marijuana with the intent to distribute and aiding and abetting in violation of federal law. By the terms of that agreement, Cervantes waived his right to challenge the sentence imposed by the court so long as it made no upward departure. While the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Phillip S. Figa, United States District Judge for the District of Colorado, sitting by designation.

government agreed to consider filing a downward departure motion, it ultimately did not file the motion. Prior to sentencing Cervantes moved to withdraw his guilty plea or, in the alternative, for a downward departure from the applicable federal sentencing guideline range imposed under the plea agreement. After oral argument, Cervantes' motions were denied and the court sentenced him to one hundred and eighty-eight months imprisonment and five years supervised release. Notwithstanding the appeal waiver, Mr. Cervantes appeals his sentence.

On appeal, Cervantes frames three issues for review. First, he contends that the government breached its plea agreement by failing to afford him an opportunity to cooperate and earn a motion for downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1. He claims a government representative told him that the terrorist attacks on September 11, 2001 altered the mission of the United States Customs Service from primarily smuggling control to homeland security. While Cervantes claims he fully cooperated with the government, the resulting shift of federal resources and personnel, he asserts, prevented the government from following up on valuable information he provided. The government declined to file a motion for downward departure. Second, Cervantes argues the district court abused its discretion in denying his motion to withdraw his plea in those circumstances in which "performance of the agreement became impossible because of circumstances outside his, or the

government's, control." Third, he contends the district court abused its discretion by refusing to consider his cooperation with the government in the imposition of his sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM the judgment of the district court.

BACKGROUND

A. The underlying offense and charges

On July 3, 2001, New Mexico state police officers stopped a vehicle traveling northbound on Highway 180 in Deming, New Mexico, which was being operated by Danny Cervantes. (Earlier that day the Luna County, New Mexico, Sheriff's Office had received information from a cooperating source that a vehicle matching that operated by Cervantes would be used in transporting an unspecified quantity of marijuana through the state.) During the course of the traffic stop, officers detected the smell of raw marijuana emitting from the vehicle and observed numerous square shaped, plastic wrapped packages in the rear seat of the vehicle. When they questioned Cervantes about the suspicious smell, he admitted that he was transporting more than one pound of marijuana and was immediately taken into custody. An inspection of Cervantes' vehicle uncovered 60 sealed packages of marijuana with a net weight of more than 537 pounds (243 kilograms). While in custody, Cervantes directed law enforcement officials to

where he had picked up the marijuana, which resulted in subsequent seizures of over 800 pounds of marijuana that same day.

On October 4, 2001, a federal grand jury returned a one count indictment charging Cervantes with Possession With Intent to Distribute 100 Kilograms and more of Marijuana in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B) and aiding and abetting in violation of 18 U.S.C. § 2. On October 19, 2001, Cervantes moved to suppress the evidence seized from his vehicle, arguing it was obtained subsequent to an illegal investigatory stop. This motion was denied on October 23, 2001.

B.    The plea

On January 7, 2002, pursuant to a plea agreement with the United States, Cervantes pled guilty to the charge returned in the federal indictment. By the terms of that agreement, Cervantes agreed to waive enumerated constitutional rights, to "cooperate with the United States by giving truthful and complete information" of his knowledge of the criminal activity underlying the indictment and to provide witness testimony, if required, in any grand jury investigation or court proceeding. In addition, Cervantes acknowledged the agreement "conferred a benefit upon him" and, that "no downward departure from the applicable sentencing guideline range is appropriate." He, therefore, agreed not to "seek a downward departure from the applicable guideline range as determined by the

Court . . . ."  Cervantes also "waive[d] the right to appeal the sentence imposed" so long as the court made no upward departure from the applicable sentencing guidelines.

In return, the government promised to bring no further charges against Cervantes relating to his known criminal conduct and stipulated he was a minor participant in the criminal activity underlying the indictment, had demonstrated a personal acceptance of responsibility and was therefore entitled to certain reductions from his base offense level pursuant to U.S.S.G. §§ 3E1.1 and 3B1.2. These stipulations were not binding on the court.  Additionally, the government agreed to consider moving for a downward departure based on Cervantes' cooperation pursuant U.S.S.G. § 5K1.1.  The decision of whether to seek a substantial assistance departure rested solely in the discretion of the United States Attorney for the District of New Mexico.

The plea agreement further provided that the following positions would be taken in regard to sentencing:

"The United States has made, and will make, NO AGREEMENT . . . that a specific sentence is the appropriate disposition of this case. [¶]  The United States has made, and will make, NO AGREEMENT to approve, to oppose, or not to oppose . . . any request made by the defendant or on behalf of the defendant for a

particular sentence in this case other than the stipulations" agreed upon elsewhere in the plea agreement.

Moreover, the agreement states that Cervantes "fully understands that determination of the sentencing range or guideline level, as well as the actual sentence imposed, is solely in the discretion of the Court" and agrees that "[t]here have been no representations or promises from anyone as to what sentence the Court will impose." The agreement also provides that Cervantes "will not be allowed to withdraw the plea if the applicable guideline range is higher than expected or if the Court departs from the applicable guideline range."

Prior to accepting Cervantes' plea, the district judge, adhering to the requirements of Rule 11, Fed. R. Crim. P., probed Cervantes regarding his understanding of the terms of the plea agreement. The court informed Cervantes of his constitutional rights and his waiver of those rights, that he faced a maximum penalty of not less than five years and not more than forty years, that the government made no agreement as to the actual sentence he would receive and that he would not be allowed to withdraw his plea if the sentence imposed was longer than he expected. Cervantes acknowledged that his sentence would be determined by the court and that any representations made by counsel of a particular sentence were only "best estimate[s]." Furthermore, the court advised Cervantes of his obligation to cooperate with the government in future criminal

investigations and of the government's return promise to consider moving for downward departure based upon Cervantes' assistance. Cervantes was specifically told that the decision of whether to move for a substantial assistance departure was in the discretion of the United States Attorney. The court also explained the consequences of Cervantes' appeal waiver and the various implications of being adjudged guilty of a felony offense. After being advised of these facts, Cervantes pled guilty. Cervantes then provided sworn testimony establishing that he was guilty of the offense charged. The district judge, determining Cervantes' plea was made knowing and voluntarily, accepted his plea of guilty and adjudged him guilty of possession with intent to distribute 100 kilograms or more of marijuana, in violation of federal law.

C. The assistance

On at least three occasions, Cervantes debriefed federal agents regarding his knowledge of drug trafficking activities. Cervantes contends he provided the government with various pieces of information, all of which they accepted, including identifying photographs of the individuals who had provided the marijuana for him to transport. Cervantes reportedly expressed a willingness to obtain information as a confidential informant under supervised release; however, his extensive criminal record prevented federal agents from employing his active cooperation. In addition, Cervantes claims he told agents that both his friend and

his brother were willing to work as confidential informants on his behalf. The government maintains that despite several attempts by agents, they were unable to contact the friend. (Why the brother did not become a confidential informer or perhaps was not even contacted by the government is not clear from the record.) The information provided by Cervantes did not result in any arrests or prosecutions and Cervantes never testified in any grand jury investigation or trial proceedings as a result of his cooperative efforts.

D.    Appellant's sentencing

On March 31, 2003, after learning the government did not intend to move for a downward departure, Cervantes filed objections to the presentence report, moved to withdraw his plea on the grounds that the government breached its plea agreement and, in the alternative, requested the court depart downward from the applicable sentencing guidelines notwithstanding the government's determination that Cervantes' assistance did not warrant such a departure and his prior promise not to attempt to do so. On April 30, 2003, after oral argument, Cervantes' motion to withdraw his plea was denied. In its Order of April 29, 2003 denying Cervantes' motion to withdraw plea, the district court found that Cervantes (1) failed to meet his threshold burden of demonstrating his innocence; (2) failed to assert his actual innocence; (3) failed to assert that his plea was unknowing or

involuntary; (4) did not assert ineffectiveness of counsel; and, (5) the government would be prejudiced by granting of the motion.

Cervantes' initial sentencing hearing was held on June 17, 2003. At the hearing, Cervantes persisted in his motions seeking a downward departure from the applicable sentencing range. The district court judge declined to take up the issue, finding that Cervantes' had agreed not to seek a downward departure from the applicable sentencing guideline range and continued the hearing. On July 1, 2003, the parties joined to amend the plea agreement to allow Cervantes to move for a downward departure. In the joint motion, the government maintained its position that it opposed Cervantes' motion for downward departure on its merits. A final sentencing hearing was held on September 18, 2003. Following oral argument, Cervantes' remaining motion for downward departure and all objections to the presentence report were denied. In denying Cervantes' motion for downward departure, the district judge explained that Cervantes was aware when he entered into the plea agreement "that if everything went exactly the way the Government and he intended, there was still no guarantee of a substantial assistance departure." The district judge found Cervantes' guideline imprisonment range to be 188-235 months, which included a three level reduction in offense level for acceptance of responsibility, and imposed the guideline minimum term of 188 months.

DISCUSSION

A.     Subject Matter Jurisdiction

Title 28, United States Code, section 1291 provides that "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."  See 28 U.S.C. § 1291.  The district court's entry of a sentence against Cervantes constitutes a final judgment.  See e.g. United States v. Hahn, 359 F.3d 1315, 1320 (10th Cir. 2004) ("It is beyond dispute that a conviction and imposition of a sentence constitute a final judgment for § 1291 purposes.").  Thus, this Court has jurisdiction under § 1291, "even when the defendant has waived his right to appeal in an enforceable plea agreement." Id. at 1322.

B.     The Government's Alleged Breach of the Plea Agreement

Cervantes argues on appeal that the government obligated itself to give him the opportunity to render substantial assistance in exchange for relief in sentencing and that the government's failure to do so resulted in a breach of the plea agreement.  Whether the government has breached a plea agreement is a question of law we review de novo.  See United States v. Brye, 146 F.3d 1207, 1209 (10th Cir. 1998); United States v. Courtois, 131 F.3d 937, 938 (10th Cir. 1997).  In making this determination, consistent with the leading case on the subject, Santebello v. New York, 404 U.S. 257, 262 (1971), we "examine the

nature of the government's promise" and then "evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered." United States v. Werner, 317 F.3d 1168, 1170 (10th Cir.), cert. denied, 124 S.Ct. 74 (2003). General principles of contract law guide our analysis of the government's obligations under the agreement. See United States v. Guzman, 318 F.3d 1191, 1195 (10th Cir. 2003). Thus, "we look to the express terms of the agreement and construe any ambiguities against the government as the drafter of the agreement." United States v. Peterson, 225 F.3d 1167, 1171 (10th Cir. 2000), cert. denied, 531 U.S. 1131 (2001).

Here, the plea agreement signed by Cervantes required that he "cooperate with the United States by giving truthful and complete information and/or testimony concerning [his] participation in and knowledge of criminal activities." Aplt. App. at 14. The agreement does not contain, however, any express stipulation or promise by the United States to afford Cervantes an opportunity to render valuable assistance. Rather, the agreement states:

Upon completion of the defendant's cooperation described above, the United States may move, pursuant to U.S.S.G § 5K1.1, to have the Court depart downward from the applicable guideline sentence. The defendant understands that the decision of whether to seek a downward departure for substantial assistance

will be made in the sole discretion of the United States Attorney for the District of New Mexico. Id. at 15.

Additionally, at Cervantes' plea hearing, the district judge explained that the decision of whether to seek a substantial assistance departure was at the discretion of the government.

> THE COURT: The government may file a 5K1.1 for downward departure, but that's up to the U.S. Attorney's Office whether they do that or not. Do you understand that?
>
> THE DEFENDANT: Yes.

Cervantes does not claim he was promised a motion for downward departure. Rather, he argues that inherent in the government's agreement to consider his cooperation in deciding whether to file a motion for downward departure was the promise to provide him with an opportunity to render assistance meriting such a departure. Cervantes contends that he "entered into the agreement lured by the inducement of a reduced sentence" and that the government's inability or unwillingness to capitalize on his cooperation following the September 11, 2001 terrorist attacks denied him the benefit of his bargain. We disagree.

It is established that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, such promise must be fulfilled." Santobello v. New York, supra, 404 U.S. at 262. This is not a case, however, where a promise was made and not fulfilled. Given that the U.S. Attorney has sole discretion to decide whether to file a downward departure motion, his failure to do so was not a breach of the plea agreement. In United States v. Courtois, supra, the defendant claimed the government breached its plea agreement which stated, "the discretion [to file a downward departure motion for substantial assistance] rests solely with the government." 131 F.3d at 937 (brackets in original). The defendant argued that this provision obligated the government to afford him an opportunity to render substantial assistance and that the government's failure to do so resulted in a breach of the agreement. As in the instant case, the "defendant gave truthful information to the government" in good faith, including identifying potential buyers of the narcotics seized in the course of his arrest. Id. at 938. The government was unable to take advantage of the defendant's assistance, however, and terminated the investigation, in part, because (1) the defendant was unable to actively cooperate under supervised release, and (2) the lead agent was unable to continue the investigation due to operational constraints beyond the defendant's control. Id. It was held that the plea agreement, by "expressly leaving the decision to file [a substantial assistance downward departure] motion in the sole discretion of the government," did not create an obligation on the government to

continue the investigation. Id. at 939. Rather, this Court concluded that "the government decided to terminate its investigation, rendering defendant's cooperation unnecessary. As defendant has not alleged that the government terminated its investigation for impermissible or irrational reasons, he has alleged no grounds for relief." Id.

Here, the government made no promises to Cervantes that went unmet. Like the plea agreement in Courtois, the agreement signed by Cervantes left the decision of filing a motion for downward departure for substantial assistance within the sole discretion of the United States Attorney. Moreover, Cervantes does not allege that the government terminated its investigation for impermissible or irrational reasons. To the contrary, Cervantes acknowledges that the reallocation of federal resources rendering the fruits of his assistance not overly helpful "may not be the government's fault." Aplt. Brief-in-Chief at 14. We find no basis for interpreting the plea agreement as requiring the government to provide Cervantes an opportunity to cooperate in exchange for relief in sentencing. Thus, accepting arguendo Cervantes' theory that he was not given the opportunity to provide substantial assistance due to a shift in the mission of the United States Customs Service from primarily smuggling control to homeland security, he has failed to allege any breach of the plea agreement.

C. The District Court's Denial of Cervantes' Motion to Withdraw His Plea

Cervantes next argues that the district court abused its discretion in denying his motion to withdraw his plea. Fed. R. Crim. P. 11(d)(2)(B) provides that "the defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." "The burden of demonstrating a 'fair and just reason' rests with the defendant." United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999). We review the district court's denial of Cervantes' motion to withdraw his plea for an abuse of discretion, United States v. Killingsworth, 117 F.3d 1159, 1161 (10th Cir.), cert. denied, 522 U.S. 961 (1997), and "we will not reverse absent a showing that the trial court acted unjustly or unfairly." Kramer, supra, 168 F.3d at 1202.

We have set forth seven relevant factors for consideration in determining whether a defendant has shown a fair and just reason for permitting withdrawal of a guilty plea: (1) whether the defendant has asserted his innocence; (2) prejudice to the government if the motion is granted; (3) defendant's delay in filing the withdrawal motion; (4) whether the court is inconvenienced if the motion is granted; (5) defendant's assistance of counsel; (6) whether the plea was made knowing and voluntary; and (7) the waste of judicial resources. See United States v. Carr, 80 F.3d 413, 420 (10th Cir. 1996); United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993), cert. denied, 510 U.S. 1184 (1994). The district judge

who accepted Cervantes' plea reviewed these factors, found that five of the seven factors weighed heavily against granting the withdrawal motion, and concluded that Cervantes had not presented a fair and just reason for the withdrawal of his guilty plea. (The district judge who accepted Cervantes' plea concluded that only two factors, "inconvenience to the court" and "waste of judicial resource" did not weigh heavily against permitting withdrawal of the guilty plea.)

On appeal, Cervantes adopts the same argument for withdrawal of his guilty plea that he advanced in an attempt to establish the government breached the plea agreement; namely that he entered the agreement with the belief the government would provide him with the opportunity to cooperate in return for a substantial assistance departure. Cervantes argues that the government's failure to capitalize on his cooperative efforts is a "fair and just" reason for granting his withdrawal motion and, thus, the district court abused its discretion in finding that the that the first, second, third and sixth factor weighed against permitting him to withdraw his plea. As was discussed above, Cervantes' argument is unavailing.

i. Assertion of innocence

First, Cervantes argues that the district court "acted unjustly and unfairly" by relying primarily on his admission of guilt in denying his withdrawal motion. He contends that he asserted his legal innocence "when he brought to the court's attention his claim of right to suppression of evidence." The District of Columbia

Circuit in considering the "meaning of the fair and just standard" found that "[w]hether the movant has asserted his legal innocence is an important factor to be weighed," but that "the mere assertion of a legally cognizable defense is [not] always a sufficient condition for securing a withdrawal of a plea." United States v. Barker, 514 F.2d 208, 221-22 (D.C. Cir.), cert. denied, 421 U.S. 1013 (1975). Barker further instructs that a court "must consider not only whether the defendant has asserted his innocence, but also the reason why the defenses now presented were not put forward at the time of original pleading." Id. at 221.

Cervantes now asserts his legal innocence, arguing that he entered into the plea agreement "[r]ather than pursue other remedies available to him, including attempts to suppress the evidence seized from the vehicle." Aplt. Brief-in-Chief at 10. While such an assertion is a legally cognizable defense that might satisfy the first factor in some circumstances, the argument overlooks the fact that Cervantes unsuccessfully moved to suppress the evidence nearly three months before pleading guilty to marijuana charge. Aplee. App. at 12-13, 18. Moreover, Cervantes does not dispute that he committed the offense underlying the federal indictment. Taken together, the district court acted well within its discretion in determining that Cervantes had "failed to meet his threshold burden of demonstrating his innocence."

### ii. Prejudice to the Government

Next, Cervantes contends that the government would not suffer substantial prejudice if he were allowed to withdraw his plea. Aplt. Brief-in-Chief at 17-18. This argument was not advanced below in the withdrawal motion or at oral argument. Even had it been properly raised, Cervantes argument fails to consider that "the defendant bears the burden of persuasion at the trial level "and unless a 'fair and just' reason for the withdrawal [is presented], the court need not consider prejudice to the government." United States v. Hickok, 907 F.2d 983, 986 (10th Cir. 1990) (internal citation omitted). In any event, the district court's finding of prejudice to the government if the plea were withdrawn, thus necessitating a trial, is certainly not error.

### iii. Delay in Filing Motion to Withdraw Plea

Third, Cervantes argues that the delay in filing his motion to withdraw his guilty plea is reasonable, as it "was occasioned by the government's repeated contacts . . . requesting assistance." Aplt. Brief-in-Chief at 18. Although this delay may have been unavoidable, as the basis for Cervantes' withdrawal motion was the government's decision not to seek a substantial assistance departure, Cervantes' displeasure with the unanticipated severity of his sentence given the lack of a downward departure motion by the government is not a "fair and just"

reason to withdraw from a guilty plea. See United States v. Rhodes, 913 F.2d 839, 845-46 (10th Cir. 1990).

### iv. Voluntariness of Guilty Plea

Cervantes next raises the claim that the district judge erred in finding that he knowingly and voluntarily entered his plea. Aplt. Brief-in-Chief at 19. He argues that "[a]n agreement entered into voluntarily requires a mutual understanding of the terms of the agreement . . . [and he] understood that if he did his part by supplying the information and identification requested by the government, the government would do its part by following up on the data supplied." Id. Thus, Cervantes asks this Court to find that he entered his plea under false pretenses. Whether a plea is voluntary presents a question subject to de novo review. Rhodes, supra, 913 F.2d at 843.

We find no basis for Cervantes' claim that his plea was not made knowing and voluntarily. As was discussed above, the government never promised to provide Cervantes an opportunity to cooperate in exchange for relief in sentencing and, therefore, the government's failure to provide such an opportunity cannot be relied upon to establish that his plea was entered involuntary and unknowing.

Moreover, Cervantes' argument is counter to the express language of the agreement, which states that Cervantes "agrees and represents that [h]is plea of guilty is freely and voluntarily made and not the result . . . of promises apart from

those set forth in th[e] plea agreement." Aplt. App. at 16. Also, during Cervantes' plea hearing, the district judge meticulously explained the terms of the agreement, including possible sentencing calculations, and obtained responses from Cervantes that his plea was made knowingly and voluntarily:

THE COURT: All right. The government makes no agreement as to the sentence that you will receive, and you acknowledge that this plea agreement has conferred certain benefits on you. . . .

THE DEFENDANT: Yes.

* * *

THE COURT: All right. You state your plea is freely and voluntarily made . . . . Those are the terms of the plea agreement. Is there anything in the plea agreement you want to ask me about?

THE DEFENDANT: No. Aplee. App. at 5-7.

In addition, to ensure there were no misunderstandings regarding the terms of the plea agreement, the district judge queried Cervantes' counsel regarding his client's understanding of the agreement:

THE COURT: Mr. Klipstine, did I correctly summarize the terms of the plea agreement?

MR. KLIPSTINE: I believe so, Your Honor.

-20-

THE COURT: All right. Are you satisfied that your client understands each and every term in the plea agreement?

MR. KLIPSTINE: Yes, Your Honor. Id. at 7.

Recognizing that "[i]t is within the sound discretion of the trial court to determine what circumstances justify granting" a plea withdrawal motion, United States v. Wade, 940 F.2d 1375, 1377 (10th Cir. 1991), we conclude that Cervantes has failed to show that the district court acted unjustly or unfairly in denying his motion to withdraw his guilty plea.

C. District Court's Denial of Cervantes' Motion for Downward Departure

Lastly, Cervantes argues that the district court erred by refusing to review the government's discretionary refusal to file a substantial assistance motion and denying his motion for downward departure. We need not confront the merits of Cervantes substantive argument, concluding that Cervantes validly waived his right to contest his sentence on appeal.

"A defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable." United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001) (internal citation and quotation marks omitted); see also United States v. Hahn, 359 F.3d 1315, 1318 ("Given the importance of plea bargaining to the criminal justice system, we generally enforce plea agreements and their concomitant waivers of appellate rights"). In Hahn, we adopted a three

pronged analysis to determine whether a defendant's waiver of appellate rights requires dismissal of a defendant's appeal. A defendant's waiver will be enforced if: (1) the disputed appeal falls within the scope of the waiver; (2) the waiver was made knowingly and voluntarily; and (3) enforcing the waiver would not result in a miscarriage of justice. Hahn, 359 F.3d at 1325. We address these issues in turn.

### i. Scope of Cervantes' Waiver

A defendant's waiver of his appellate rights is enforceable when the disputed appeal falls within the scope the plea agreement. See Hahn, supra, 359 F.3d at 1325. In determining the scope of the waiver, we narrowly construe the language of the plea agreement, reading any ambiguities in the agreement against the government and in favor of a defendant's right to appeal. Id.

Cervantes' plea agreement provides in relevant part as follows:

WAIVER OF APPEAL RIGHTS

11. The defendant is aware that Title 18, United States Code, § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the applicable guideline range as determined by the Court after resolution of any objections by either party to the presentence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the Court in

resolving any contested sentencing factor. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the Court may depart upwards from the applicable sentence guideline range as determined by the Court. Aplt. App. at 16.

The district court made no upward departure from the applicable sentencing guidelines, but rather sentenced Cervantes to the statutory minimum within the applicable guideline range. Moreover, as Cervantes "specifically agree[d] not to appeal the determination of the Court in resolving any contested sentencing factor,"construing the language of the plea agreement narrowly, we conclude that Cervantes' appeal of the district court's refusal to depart on the basis of his cooperation unambiguously falls within the scope of his appellate waiver. See Hahn, supra, 359 F.3d at 1325.

ii. Knowing and Voluntary

In determining whether Cervantes's waiver of appellate rights was made knowingly and voluntarily, two factors are considered. Hahn, supra, 1325. First, whether the language of the plea agreement entered into by defendant states that the agreement was made knowingly. Id. Second, whether the plea colloquy conducted by the court pursuant to Fed. R. Crim. P. 11, prior to the acceptance of defendant's plea was adequate. Id. The defendant bears the burden on this score. Id. at 1329.

First, the agreement states that Cervantes knowingly "waives" his right to challenge the court's imposition of a sentence within the applicable guideline range. Aplt. App. at 15.

Second, Cervantes agreed in the plea agreement at paragraph 6.D that he "will not seek a downward departure form the applicable sentencing guideline range as determined by the court after resolution of any objections by either party to the presentence report to be prepared in this case."

Third, during Cervantes' plea hearing, the district judge explained to Cervantes' his waiver of appellate rights with meticulous exactitude and obtained responses that he voluntarily waived his right to contest his sentence on appeal.

THE COURT: All right. The government makes no agreement as to the sentence that you will receive, and you acknowledge that this plea agreement has conferred certain benefits on you. . . .

THE DEFENDANT: Yes.

THE COURT: The government may file a 5K1.1 for downward departure, but that's up to the U.S. Attorney's Office whether they do that or not. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. You have the right to appeal. However, you are waiving that right to appeal as part of your plea agreement.

THE DEFENDANT: Yes.

THE COURT: So when you're sitting in prison and you say, "I'd like to appeal," there is no appeal.

THE DEFENDANT: Yes.

THE COURT: Do you understand that?

THE DEFENDANT: Yes.Aplee. App. at 5-6.

Cervantes has failed to satisfy his burden under Hahn, as the record does not support his contention that his plea was made unknowing and involuntarily.

### iii. Miscarriage of Justice

Enforcement of an appellate waiver results in a miscarriage of justice when "(1) the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful." Hahn, 359 F.3d at 1327 (citations omitted). To satisfy the fourth factor under Hahn, the alleged error must "seriously affect the fairness, integrity or public reputation of judicial proceedings . . . ." Id. (internal citation and quotation marks omitted).

Enforcing Cervantes' waiver of appellate rights will not result in a miscarriage of justice. As previously discussed, even if the September 11, 2001 terrorist attacks prompted a governmental shift in resources causing it to lose the benefit of Cervantes' assistance, the fairness, integrity or public reputation of judicial proceedings are not implicated. Cervantes' argument that "[t]he government, because of circumstances or otherwise, took from him and gave nothing in return" overlooks the fact he was sentenced at the lowest range in the guideline level and that the government acted well within its discretion in its decline to seek a downward departure for no improper reason. Thus, Cervantes has failed to demonstrate that enforcing his appeal waiver is "otherwise unlawful." Hahn, 359 F.3d at 1327

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the judgment of the district court.

Entered for the Court

Phillip S. Figa
District Judge